No. 28,426.

CORENE STEWART BAKER, *Appellant*, v. FRANKIE STEWART HICKMAN, as an Individual and as Executrix of the Estate of Gertrude E. Stewart, Deceased, *Appellee*.

(273 Pac. 480.)

Opinion filed January 12, 1929.

*J. B. Wilson* and *E. H. Beck*, both of Lawrence, for the appellant.

*J. H. Mitchell*, of Lawrence, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action to set aside a will and the probate thereof. The trial court sustained a demurrer to plaintiff's petition, and she has appealed. The questions argued can be shown best by setting the will out in full. It reads:

"I, Gertrude E. Stewart, of Lawrence, Douglas county, Kansas, being of lawful age and sound mind and memory, do hereby make, publish and declare this instrument of writing to be and contain my last will and testament.

"I hereby state that my property consists of money in bank, mortgages on real estate, together with some bonds and other securities. I have two daughters, Mrs. Corinne Stewart Baker, of North Bend, Ore., and Mrs. Frankie Stewart Hickman, of Kansas City, Mo., who are my sole heirs at law.

"First. I direct that all of my just debts, funeral expenses and the expenses of the settlement of my estate shall be paid in full.

"Second. In the event that at the time of my decease my daughter, Mrs. Corinne Stewart Baker, is still the wife of L. L. Baker, I give and bequeath to her the sum of one dollar ($1) to be paid from my estate.

"Third. I give and bequeath to my daughter, Mrs. Frankie Stewart Hickman, aforesaid, all the remainder and residue of my estate of whatever kind and nature.

"Fourth. But in the event that my daughter, Mrs. Corinne Stewart Baker, aforesaid, shall at the time of my decease be a widow, or shall have obtained a divorce from L. L. Baker, and shall no longer be the wife of L. L. Baker, then I desire and order that my two daughters, Mrs. Corinne Stewart Baker and Mrs. Frankie Stewart Hickman shall share equally, share and share alike, in my estate.

"I hereby nominate and appoint my daughter, Mrs. Frankie Stewart Hickman, executor without bond of this my last will and testament, with full power to carry out all of its provisions.

"In Witness Whereof, I have hereunto subscribed my name this 12th day of December, 1925, in the presence of Mina P. Dias and Narsie Carter, who are requested by me to attest and subscribe this will as witnesses, and in whose presence I do hereby acknowledge the same to be my free act and deed.

"GERTRUDE E. STEWART, *Testator*.

"Signed, sealed, published and delivered by the said Gertrude E. Stewart, the testator above named, as and for her last will and testament, in the presence of us, who at her request and in her presence and also in the presence of each other, have hereunto subscribed our names as witnesses this 12th day of December, 1925. ELLA HILDEBRAN,

MINA P. DIAS, *Witnesses*."

Appellant first argues that the instrument is not properly witnessed, for the reason that the testator in the body of the will named two persons before whom she had executed it, and whom she requested to sign as witnesses, only one of whom did so.

This point lacks merit. The attesting clause recites that the instrument was executed and acknowledged in the presence of two attesting witnesses. This is all the statute (R. S. 22-202) requires. The order of the probate court admitting the will to probate is *prima facie* evidence of due attestation (R. S. 22-224), and the petition contains no allegations of fact tending to establish that the statements of the attestation clause are not true. The fact that one of the attesting witnesses was not named as a witness by the testator in the body of the will is of no consequence.

Appellant further argues that the provisions of the will tend to promote divorce or homicide and are void as against public policy. In the petition it is alleged that the testator died August 26, 1927, almost two years after the will was executed; that the testator had a strong dislike for plaintiff's husband, L. L. Baker, and urged plaintiff to sever her marriage relation with him, and that on being

refused the testator executed this will and "flouted the same before the eyes of this plaintiff and demanded that this plaintiff get rid of her husband." This presents the only meritorious question in the case. We regret that it was not better briefed by counsel. We have investigated the authorities as fully as our limited time would permit and have reached the conclusion that the point is not well taken.

At the beginning of the discussion we note, for whatever bearing it may have, that there is no allegation in the petition that the testator was unduly influenced by anyone in the making of her will, neither is it alleged that she was of unsound mind or laboring under an insane delusion. For all the petition alleges the testator may have been justified in her dislike of plaintiff's husband. Parents have considerable latitude in advising their children regarding their marriage relations, and under some circumstances may properly advise a separation; indeed, it may become their duty to do so. Generally speaking, a testator of sound mind and not under undue influence has a right to dispose of his property by his will as he pleases. The validity of the will of such a person is to be determined primarily from the language of the will. If the language of the will can be reasonably construed to sustain its validity, that construction should be given to it, rather than to give the language a construction which would render the instrument invalid. Extrinsic evidence may be received to show the extent of the testator's property, but, in the absence of allegations of undue influence, such evidence is incompetent to show the motives which prompted the testator to dispose of the property as he did; hence, allegations in the petition in this case as to those matters must be disregarded.

It is a common provision in wills that a devise or bequest shall vest in certain beneficiaries in the event of the death of a person named. Such provisions have never been held invalid for the reason that they tend to induce the beneficiaries to kill the person named, or to accelerate the event of his death by any unlawful means; rather, such wills are construed as arising from the lawful ideas of the testator that the death of the person named would eventually take place from natural causes.

Appellant stresses the argument that a gift or devise in restraint of marriage, or tending to bring about a separation or divorce between husband and wife, is void as against public policy. We are

not cited to a case, and our own search discloses none, in which this court has heretofore passed upon this question. There are many cases, however, in the English and other American courts treating the question, or some phase of it. The principle of the common law is laid down by Coke and Cruise:

"If an estate be given to a woman *'dum sola fuerit'* (while she shall remain sole) or *'durante viduitate* (during widowhood), the grantees have an estate for life determinable upon the happening of these events." (1 Just. 42 (a), Cruise Dig. Tit. Estate for Life, ch. 1, § 8.)

In England the ecclesiastical courts were powerful and influential for many years and took over very largely the questions pertaining to the family relation. These courts encouraged marriage and frowned upon divorce, and held, generally speaking, that any gift or devise which made it to the financial advantage of a single person to remain unmarried, or for a married person to obtain a divorce, or a husband or wife to live separately and apart from the other, was void. Rules pertaining to that subject were clearly traceable to the civil law and ultimately to the Roman. The ecclesiastical courts dealt only with personal property. When the common-law courts were called upon to decide similar questions they were sometimes seriously embarrassed with precedents already established in the ecclesiastical courts. The courts of chancery found difficulty in harmonizing these conflicting views in accordance with equitable principles. The result was a lack of harmony in the decisions which even the English courts deplored. (28 R. C. L. 321 *et seq.*) A similar lack of harmony existed in the early American decisions. (1 Story's Equity Jurisprudence §§ 291a, 291e, 291d.) Lack of harmony among the decisions of the various jurisdictions still exists. (See cases collected in the notes, 49 L. R. A., n. s. 633, 637, and 45 A. L. R. 1220.) Generally speaking, it may be said that the courts of equity and of common law in England, and generally the American courts, are inclined to hold as void only those gifts, legacies or devises which would be an unreasonable restraint of marriage, or which tend to cause a separation between married people unlawfully, or without just cause, rather than to follow the rules of the ecclesiastical courts, although a few of the American decisions prefer to follow the rules of the ecclesiastical courts in their entirety. (40 Cyc. 1699 *et seq.;* also 1712, ¶ n.)

Some of the courts have noted that the real question for determination is whether or not the specific provisions in question are

against public policy, and have pointed out that our civilization has developed different ideas with respect to the marriage relation, and especially with respect to the rights, duties and obligations of married women, than those entertained by the early Romans and which found their way into the rules of the ecclesiastical courts of England. (See *Wise v. Crandall*, 215 S. W. 245 [Mo. Sup. Ct.].) Hence our standard of what constitutes public policy differs from the standards constituting the public policy of those days. While the laws of our state provide for marriages, and may be said to encourage them, and our public policy may be said to encourage marriage and the maintenance of homes, there would seem to be no valid reason why a parent, in making provision for his children by a will, especially provision for his daughter, might not make the enjoyment, or full enjoyment, of the gift dependent upon the event of her marriage; and several courts have held valid such provisions.

With respect to divorce, our statutes and public policy may be said not to encourage divorce, but our statutes provide for divorces to be granted for specific reasons. In *Daboll v. Moon*, 88 Conn. 387, it was said:

"It never has been the policy of this state, as it formerly was the policy of the church to compel people married to each other to continue for life in that relation and to cohabit together, regardless of their inaptitude for such cohabitation, and however unfitted they may be in disposition and temperament to mutually perform the duties of the marriage relation. The state does not favor divorces; but allows them for several causes, because it believes the interests of society will thereby be better served, and that its own prosperity will thereby be promoted." (p. 391.)

The same may be said with respect to our own statute and the public policy of this state. A provision in a will cannot be said to be against the public policy of this state from the simple fact that the gift or devise depends upon whether or not an event has occurred which is in harmony with our statute and the public policy of our state.

The leading American cases dealing with the question of gifts and devises, and depending upon the marriage of the beneficiary, an unmarried person, are: *Wise v. Crandall*, 215 S. W. 245 (Mo. Sup. Ct. 1919); *Turner v. Evans*, 134 Md. 238; *Ijams v. Schapiro*, 138 Md. 16; *Wilmington Trust Co. v. Houlehan*, 131 Atl. 529 (Del. Ct. of Chancery, 1925); *Maddox v. Yoe*, 121 Md. 288; *Logan v. Hammond*, 155 Ga. 514; *Glass v. Johnson*, 297 Ill. 149; *Thompson*

*v. Patten,* 70 Ind. App. 490; *Pacholder v. Rosenheim,* 129 Md. 455; *Meek v. Fox,* 118 Va. 774; *Sullivan v. Garesche,* 229 Mo. 496; *Williams & Williams v. Cowden,* 13 Mo. 212; *Bryan v. Harper,* 177 N. C. 308, 98 S. E. 822; *In re Miller,* 159 N. C. 123; *Matter of Seaman,* 218 N. Y. 77; *Harlow v. Bailey,* 189 Mass. 208; *Goffe v. Goffe,* 37 R. I. 542.

Of the American cases concerning gifts or devises to persons who are married, the benefits, or increased benefits, to depend upon whether or not there is a separation or divorce, in three of them the provisions were held to be invalid as tending unlawfully or unreasonably to cause a separation.

In *Brizendine v. American Trust & Savings Bank,* 211 Ala. 694, a mother, owning considerable property, made specific bequests and disposed of one-half of the remainder in a specific manner, and provided:

"The other half of my real estate I will bequeath to my own son, Frank L. Brizendine, provided he will reform, and give up living with, or having anything to do with this Mrs. Moore by name, whom he now lives with, and who alienated Frank's affections from his legitimate wife and son, Frank Brizendine, Jr., and he, Frank Brizendine, shall not have a. dollar of my' real estate, unless he forsakes her (Mrs. Moore) and has nothing to do with her for a period of seven years, and proves that he has given her, Mrs. Moore, up—then I bequeath him, Frank Brizendine, the other half of all my estate." (p. 695.)

The son was legally married to Mrs. Moore in July, 1921, and she was his legal wife at the execution of the will in October, 1921. He had been married before, but had been divorced from his wife and was allowed by the court the privilege of marrying again. The court said:

"It is evident that the testatrix intended to bring about a separation or divorce between her son and his wife by this condition precedent in the will to the vesting in him of an undivided one-half interest in this real estate. This condition is void; the devise to the son is valid and the title to this one-half of the real estate of the testatrix vested in him at her death subject to the payment of the debts of the estate and its *pro rata* share of the legacies, as aforesaid. This condition is against public policy, and it will not be sanctioned by the law. This condition in this will is void as against public policy. (40 Cyc. 1703; *Hawke v. Euyart,* 30 Neb. 149; *In re Estate of Gunning,* 234 Pa. 139.)" (p. 698.)

In *Conrad v. Long,* 33 Mich. 78, the testator devised the lands in question to his mother for life and after her death to his brother

one-half and the other half to his "sister Elizabeth Long, upon this condition: if at any time subsequent she should conclude not to live with her present husband, Henry Long, as his wife. But if she continue to so live as the wife of said Henry Long until her death, then, in that case I give and bequeath all my property . . . to my aforesaid brother." (p. 79.) It was claimed on behalf of Conrad that the will established a condition precedent, which was void, and that no estate could attach. The court said:

"That the condition is void is admitted. It is contrary to the plainest principles of public policy to stipulate or provide in this way for a separation of husband and wife as a condition to the enjoyment of an estate. No separation against their will, except by divorce, is consistent with the nature of the marriage contract, which is of public as well as of private concern. But we find here nothing in the nature of a condition precedent. . . . We think she took an estate clear of conditions." (pp. 79, 80.)

In *Hawke v. Euyart,* 30 Neb. 149, a devise in a father's will in favor of a son addicted to intemperate habits, made in form to the executors of the will, directed that at the end of ten years, if the son had reformed, the executors should convey the land and trust fund to the son, *held* that the devise was conditional on the reformation of the son and was valid, but a subsequent provision that the trust fund should not be transferred until the executors had satisfactory proof that the son "has permanently freed himself from all influence, connections, associations, cohabitations and relations, of every name, character and description, of and with Mrs. G. and her relatives, friends and intimates [Mrs. G. at the time of the making of the will being the wife of the son and living with him, a fact known to the testator], *held* to be a condition against public policy, and void," and (if the other conditions be fulfilled) the son was entitled to the devise and the bequest free from this condition. In the opinion it was said:

"The question . . . is one in restraint of the continuation of the marriage relation. . . . I think there can be no doubt, either as a question of reason from moral premises or of legal authority, not only that such condition is void, but, having been declared void, it leaves the bequest of the testator operative the same as though the condition had not been sought to be made by will. . . . Had the devisee not been lawfully married at the date of the last publication of the will of the testator, I should be of the opinion that, under the arguments and authorities of the counsel for appellees, the peculiar conditions of the will here considered would be upheld; but wholly otherwise when the marriage had been solemnized before the publication of the will." (p. 160.)

In the following cases the provisions were held valid: In *Williams v. Hund*, 302 Mo. 451, a mother, whose estate was valued at more than $200,000, left a will making four specific legacies aggregating $21,000. The remainder was conveyed to a trustee with directions to pay her son Henry $200 per month during his life, and if the executors thought he would not squander it, to advance him an additional $5,000 with which to engage in business, and in the event the trustees thought he had settled down and shown himself capable of prudent ownership and control of the estate, to convey the entire estate to him. In item 9 it was provided: "In view of the fact that my said son at this time is married to a woman, commonly known as Nora Sheldon, who is generally known to be a woman not of good character, it is my wish and I direct that she be permitted in no way to share in my estate. . . . Should she be the wife of my said son at the time of my death, or at the death of my son, no provision is to be made for her. . . . Should my said son at any time, even after my death, become divorced from her, or should she die before the death of my said son and if thereafter, that is, either after he is divorced from her or after her death he should remarry" (p. 458) a woman of good repute, then at the death of her son this $200 per month was to be paid to such widow during her life. The son and his wife, Nora, mentioned in the will, lived together for more than two years after the death of the testator, when she obtained a divorce from him. About four years later the son married a woman of good repute. Later the son died. The question was whether the second wife, who became a widow at the son's death, should receive the $200 per month during her life. The court held she should, and this was affirmed. The court said:

"Appellants contend that paragraph 9 of the will is void as against public policy in that it offered an inducement to Henry Lutz to procure a divorce from his first wife. That is a perversion of the language of the will. . . . The will anticipates and makes provision for future contingencies. If it had provided that Henry should have $200 a month during his lifetime, on condition that he should divorce his wife, such condition would be contrary to public policy and void, and Henry would have taken the legacy freed from the illegal condition." (p. 473, citing *Witherspoon v. Brokaw*, 85 Mo. App. 169, 173, and *Knost v. Knost*, 229 Mo. 170, 179.)

In the last case a father made a will in which he made certain provisions for his widow and children. To one daughter he gave a much larger share in the event she did not marry than if she did.

The question was whether this provision was valid. The court held it was void.

"A condition subsequent in a will in total restraint of marriage is invalid except as to widows." (129 S. W. 665, headnote.)

In *Coe v. Hill*, 201 Mass. 15, a father made a will giving to a son and one daughter a certain share of the estate, the remainder to a trustee to manage, invest and care for and pay to his widow a certain share of the income and on her death to divide the same equally among his children, except that the share that would be paid to a certain married daughter should be held in trust, she to receive the net income, and at the death of her husband, or upon permanent and legal separation from him, to receive the principal sum free from any trust. It was held that the gift to the daughter upon the death of her husband, or on permanent and legal separation from him, was not founded upon a condition precedent intended to bring about her separation from him so as to render it valid. In the opinion it was said:

"If the testator's purpose was to induce a future separation or divorce of his daughter from her husband, upon the happening of which the fund with accrued income would immediately become payable to her, the condition for this reason would be void. . . . But while the testator's intention is the only test, the language he employed is to be construed in the ordinary sense, and for this purpose the condition, which is made dependent upon either one of two contingencies, is to be treated as a whole. If this is done, then, upon either the death of the husband or upon a divorce between them, whether obtained by her or by him, the fund vests in possession, but it would be a plain perversion of words to say that the testator meant, or intended, that in order to accelerate the enjoyment of the property the petitioner should procure either her husband's death or a divorce. . . . [The language was]: 'If my daughter becomes a widow,' or 'If because of her husband's marital misconduct she lawfully obtains an absolute divorce, then the trust as to her is to be terminated, and she is to have her share of the property.'" (pp. 21, 22.)

The court further says:

"The voluntary exercise by a legatee of a right which the law confers is not against public policy, and does not avoid a testamentary gift, the language of which may show the testator had in mind that such a contingency might arise." (p. 22.)

In *Ransdell v. Boston*, 172 Ill. 439, a bequest was made to executors in trust for the use of testator's son until such time as he should become unmarried, in which event he was to have the land in fee, but if he died without being divorced and childless the land

was to go to other devisees. *Held*, not contrary to public policy nor void. The will of the father placed his property in trust for the use of his son until such time as he "shall become sole and unmarried; and, upon the happening of that event," (p. 440) the property to vest in the son in fee. The opinion observes that while the language of the testator impresses one with the belief that he desired his son to obtain a divorce, there are certain facts which go far to sustain the view that his purpose was simply to secure the gift to his son in the manner in which he considered it would render the most benefit to him in view of the relations then existing between him and his wife. They had been separated for several years prior to the execution of the will, and a divorce suit had been pending for more than two years in which each alleged statutory grounds against the other for divorce. So the provisions of the will cannot be said to encourage either the separation or the bringing of the suit, as both had taken place. The court did not regard as competent extrinsic evidence made before the will was executed to the effect the testator thought, as the son and his wife had separated, they had better remain so, and if they lived together he would disinherit the son, that he could not do much for his son while he lived with his wife.

"The general rule is that, in the construction of wills, parole testimony is competent to prove the circumstances of the testator at the time, the condition of his property, his relations to his family, etc., but never to prove his declarations prior to or after the execution of the instrument." (p. 446.)

In *Thayer v. Spear*, 58 Vt. 327, a will, devising the entire income of an estate to a married woman, so long as she remained the wife of her then husband, but if from any cause she should cease to be such wife, then to her in fee, was held not void as against public policy. In the opinion, after referring to Story's Equity Jurisprudence 291*a*, it was held the principles there stated did not defeat the will; that they apply generally to cases in which an inducement was directly held out to encourage a voluntary separation of husband and wife and where the intent to encourage separation could be found in the language employed in making the bequest.

In *Daboll v. Moon*, 88 Conn. 387, a father's will left his estate to three sons. The share of one son was given to him "upon the death of his present wife, or if he shall obtain a divorce from her or shall become separated from her," but if the son "shall ever return to live with his present wife his interest in said trust shall be divested and he shall not be entitled to receive any of the benefits

thereof." (p. 388.) The son did not separate from his wife, and was living with her at the time of the action. He claimed that the gift to him was illegal as against public policy, and that the gift thereby became absolute. *Held*, that the provision was not void. In the opinion it was said:

"The gift was to vest in the donee upon the death of his wife, upon his divorce from her, or if he permanently separated from her. We are asked to say that the condition upon which the legacy was to vest is void as against the public policy of this state, and that the result of this is to make the gift absolute, so that it vests in the donee without performance of the condition. It is clear from the langauge of the will that the result claimed would be directly contrary to the expressed intent of the testator. . . . The cardinal rule in the interpretation of wills is to seek and carry out the testator's intent. . . . It has never been the policy of this state as it formerly was the policy of the church to compel people married to each other to continue for life in that relation and cohabit together, regardless of their inaptitude for such cohabitation, and however unfitted they may be in disposition and temperament to mutually perform the duties of the marriage relation. The state does not favor divorces; but it allows them for several causes, because it believes the interests of society will thereby be better served, and that its own prosperity will thereby be promoted. . . . To make the condition void as against public policy it must appear from the language of the will alone or in connection with extrinsic facts that the testator in the particular case in question conditioned his gift upon an illegal divorce or separation. . . . Where it is possible that the condition may be legally performed, it will not be presumed that the testator intended an illegal performance. The present gift was upon alternative conditions, one of which was the death of Willard's wife. It will not be presumed that the testator, in the absence of express language so directing, intended that his son should procure his wife's death." (pp. 388-392.)

The same reasoning was applied to the question of divorce.

In *Dusbiber v. Melville*, 178 Mich. 601, the will provided:

"I understand that Florence A. Melville . . . has been compelled by the extreme cruelty of her husband to leave her home and that she cannot live with him because of his cruelty toward her. Now, my will is, that in case she shall be compelled to live apart from her said husband . . . and shall have to support herself, that I give, devise and bequeath to her . . . the sum of two thousand dollars." (p. 602.)

The testator was a bachelor. The will was executed eight days before his death. He and Mrs. Melville had been very friendly and in each other's company a great deal for two or three years. This fact had led to trouble between her and her husband and led to divorce proceedings, which were pending at the time of the testator's death. The will was upheld.

In *Snorgrass v. Thomas,* 166 Mo. App. 603, a will provided that a certain sum should be held in trust for the testator's daughter and in case she "shall lose her husband" be paid over to her absolutely. *Held,* the daughter was entitled to the bequest free from the trust after securing a divorce from her husband, where it appeared that the testator's intent was to protect the bequest against possible inroads by the husband during marital relations. The court held that the provision applied in the event of the divorce as well as in the event of the death of the husband, and that there was nothing in the will to indicate that the daughter would be induced thereby to get a divorce from her husband without reason.

"Certainly a father acts within the scope of his parental right in protecting a devise, or bequest, to his child against the possible depredations of her husband and in providing for the vesting of the absolute estate in the child on the cessation of the cause of the protective measures." (p. 612.)

In *Ellis, Executor, v. Birkhead,* 30 Tex. Civ. App. 529, a testator's will "in order to secure a sustenance" to his daughter against business vicissitudes and the improvidence of her husband, conveyed all his property to a third person in trust. It provided that should the daughter outlive or be divorced from her husband then the trust was to expire. *Held,* not void as against public policy. Further,

"That it not appearing from the terms of a will itself that a certain provision therein was void, as tending to incite testator's daughter to procure a divorce from her husband, extrinsic evidence to the effect that testator had objected to the marriage, etc., was not admissible to show such intention." (71 S. W. 31, headnote.)

In the case of *In re Gunning's Estate* (No. 1) 234 Pa. 139, the will, after making certain bequests, provided:

"The income of the balance to be given to Karl F. Miller, provided he is not living with the woman he married in 1899—one Jane Wilson—should she die, or he be divorced from her—that is, finally divorced—he is to be given absolutely one-half of the principal, and the interest of the other half as long as he lives." (p. 141.)

It was held that this was a condition precedent and is not either impossible or illegal, and where the devisee was living with the woman at the time of the death of the testatrix he was not entitled to take.

"Wills should be construed to speak and take effect as if executed immediately before the death of the testator, unless a contrary intent shall appear." (Syl. ¶ 3.)

In the opinion it was said:

"It is a fair construction of the language used by testatrix to regard the condition placed upon Miller's right to take as applying to the time when the will became effective; that is, at the time of her death. This avoids the inference that by postponing the time of fulfillment of the condition to a time subsequent to her death, the testatrix intended to hold out an inducement to Miller to separate from or procure a divorce from his wife. The prime purpose of the condition evidently was to prevent the then wife, Jane Wilson Miller, from receiving any benefit under the will." (p. 142.)

There is further discussion that in considering any restriction there is no presumption of illegality; on the contrary, the presumption is in favor of innocence and validity.

Now let us look at the will in question. The testatrix was a mother whose only heirs were two daughters, each of whom was married. By the terms of the will the estate vested at the time of the death of the testatrix—not at some future time. In whom the property vested depended upon conditions existing at the time of the death of the testator. In this respect this will is like the one construed in *In re Gunning*, supra, in which it was held there was no room to apply the principle applicable to wills designed to cause a separation of married people. The will provides, "in the event" the testatrix's daughter, Mrs. Baker, at the time of the death of testatrix, is living with her husband, then she shall have but one dollar; but "in the event" such daughter is then a widow, either by reason of the death of her husband or because the daughter had procured a complete divorce from him, then she shall have one-half of the estate. We see nothing unreasonable in the testatrix making one provision for her daughter in the event she has a husband bound by the marriage contract and obligations to provide for her, and to make another and more favorable provision for such daughter in the event she is a widow, without regard to what reason caused her to be a widow. We see nothing unlawful or against public policy in such provisions. So, as far as the language of the will itself is concerned, it is not invalid.

It remains for us to examine the allegations of the petition, that the testatrix disliked and hated plaintiff's husband and had tried to induce plaintiff to sever her marriage relations with him and, on being refused, executed this will "and flouted the same before the eyes of this plaintiff and demanded that this plaintiff get rid of her husband," together with the will itself and see if that states a case which renders the will void. Whatever may have been said

by the testatrix in that connection, there is nothing in the will itself which indicates that the testatrix contemplated that in the event plaintiff was a widow, at the time of her death, such situation would have been brought about by unlawful means. If it can be said that the testatrix contemplated that the widowhood of her daughter might be brought about by the death of her husband, there is nothing in the will to suggest that the testatrix contemplated or desired that such death would be brought about unlawfully, or result other than from natural causes. And so far as the widowhood of plaintiff, in the event she should be a widow at the time of the death of the testator, should be the result of a severance of the marriage relation of plaintiff and husband, the only severance of such relation mentioned in the will was that it be the result of a final divorce. A divorce could result only from the judgment of a court of competent jurisdiction, and would necessarily be based upon a petition for divorce, alleging grounds recognized by statute therefor, which allegations were supported by competent evidence at a hearing in court. In other words, it was a legal separation—not an illegal one—which testatrix had in contemplation when the will was executed. It cannot well be said that a legal separation is either unlawful or against public policy.

The judgment of the court below is affirmed.