57 Cal.2d 718 (1962)
Estate of JACK ROBBINS, Deceased. IRVINE ROBBINS, as Administrator with the Will Annexed, Petitioner and Appellant,
v.
LEE MISHKIN, Claimant and Respondent.
L. A. No. 26196. 
Supreme Court of California. In Bank. 
May 21, 1962.
 Brock, Fleishman & Rykoff and Hugh R. Manes for Petitioner and Appellant.
 John T. McTernan, David B. Finkel, A. L. Wirin and Fred B. Okrand as Amici Curiae on behalf of Petitioner and Appellant.
 Pacht, Ross, Warne & Bernhard, Clore Warne, Harvey M. Grossman and Ira E. Bilson for Claimant and Respondent.
 TRAYNOR, J.
 In his will the testator divided his estate into Fund A consisting of "cash, securities and money in the bank" and Fund B consisting of "a parcel of real estate situated in Los Angeles, California, and improved with two (2) single family residences, together with furniture, fixtures, personal belongings and library contained therein." He directed that the assets comprising Fund B be sold and the cash distributed to three named trustees in trust. "The income of said trust, or so much of the principal as in the sole discretion of the Trustees may be deemed desirable or advisable, is to be used for the care, comfort, support, medical attention, education, sustenance, maintenance or custody of such minor Negro child or children, whose father or mother, or both, have been incarcerated, imprisoned, detained or committed in any federal, state, county or local prison or penitentiary, as a result of the conviction of a crime or misdemeanor of a political nature." He then set forth illustrative examples of crimes of a political nature for the guidance of the trustees in the exercise of their discretion and stated his reasons for creating the trust. [fn. 1] *721
 In this proceeding to determine heirship (Prob. Code, 1080) the disposition of Fund A is not in dispute, but Lee Mishkin, a grandnephew of the testator, challenges the validity of the Fund B trust. The trial court determined that the trust is invalid. Since the will contained no residuary clause, the court entered an order determining that the property bequeathed to the trustees should pass by the law of intestate succession. The administrator-with-the-will-annexed appeals.
 [1] We agree with the contention of the administrator that the testator established a valid charitable trust. The trustees, the beneficiaries, and the trust purpose are all stated. *722 [2] "A bequest is charitable if: (1) It is made for a charitable purpose; its aims and accomplishments are of religious, educational, political or general social interest to mankind. [Citations.] (2) The ultimate recipients constitute either the community as a whole or an unascertainable and indefinite portion thereof. [Citations.]" (Estate of Henderson, 17 Cal.2d 853, 857 [112 P.2d 605].) [3] Provision for *723 the "care, comfort, support, medical attention, education, sustenance, maintenance or custody" of minor children who have been deprived of normal home life by the incarceration of one or both of their parents is unquestionably of social value. Any risk that a parent might be induced to commit a crime he otherwise would not commit because of the possibility that his child might become a beneficiary of this trust is far outweighed by the interests of the innocent children involved and society's interest in them. To hold otherwise would, as stated in another context, "incorporate into the law of the land, as legal precepts, the sayings that the sins of fathers are visited upon their children (Westbrook v. Railroad, 66 Miss. loc. cit. 569 [6 So. 321, 14 Am.St.Rep. 587]), and that the child's teeth must be set on edge because the father has eaten sour grapes. (B. & I. Railroad Co. v. Snyder, 18 Ohio St. loc. cit. 409 [98 Am.Dec. 175])." (Neff v. City of Cameron, 213 Mo. 350, 360 [111 S.W. 1139]; see also Zarzana v. Neve Drug Co., 180 Cal. 32, 34-37 [179 P. 203, 15 A.L.R. 401]; Reynolds v. Willson, 51 Cal.2d 94, 102 [331 P.2d 48].)
 [4] The testator selected a class of beneficiaries constituting an indefinite part of the community and provided adequate standards to guide his trustees in administering the trust. (Estate of Bunn, 33 Cal.2d 897, 901-904 [206 P.2d 635], and authorities cited.) Like the aged beneficiaries in Estate of Henderson, supra, 17 Cal.2d 853, Fredericka Home for the Aged v. County of San Diego, 35 Cal.2d 789 [221 P.2d 68], and Estate of Tarrant, 38 Cal.2d 42 [237 P.2d 505, 28 A.L.R.2d 419], these children require special care and attention, and it is immaterial that the beneficiaries are not limited to children in financial need. [5] "Relief of poverty is not a condition of charitable assistance. If the benefit conferred has a sufficiently widespread social value, a charitable purpose exists." (Estate of Henderson, supra, 17 Cal.2d 853, 857; see also Estate of Tarrant, supra, 38 Cal.2d 42, 50.) [6] "In short, as the word 'charity' is commonly understood in modern usage, it does not refer only to aid to the poor and destitute and exclude all humanitarian activities ... which are maintained to care for the physical and mental well-being of the recipients, and which make it less likely that such recipients will become burdens on society." (Fredericka Home for the Aged v. County of San Diego, supra, 35 Cal.2d 789, 793.)
 Lee Mishkin contends, however, that the testator's purpose was to encourage the commission of political crimes and that *724 therefore the trust is illegal. The administrator and amici curiae contend, on the contrary, that the testator's purpose was to encourage constitutionally protected freedom of speech and expression and to protect the right of lawful dissent and that these are valid charitable purposes. They contend that the illustrations the testator set forth in his will, convictions of violating the Smith Act, convictions of contempt of congressional committees, convictions for violating laws dealing with test oaths, convictions for engaging in labor-union activities, all involve areas where the lines between constitutionally protected activity and illegal activity are vaguely defined. (Cf., e.g., Dennis v. United States, 341 U.S 494 [71 S.Ct. 857, 95 L.Ed. 1137], with Yates v. United States, 354 U.S. 298 [77 S.Ct. 1064, 1 L.Ed.2d 1356]; Scales v. United States, 367 U.S. 203 [81 S.Ct. 1469, 6 L.Ed.2d 782], with Noto v. United States, 367 U.S. 290 [81 S.Ct. 1517, 6 L.Ed.2d 836]; Barenblatt v. United States, 360 U.S. 109 [79 S.Ct. 1081, 3 L.Ed.2d 1115], with N.A.A.C.P. v. Alabama, 357 U.S. 449 [78 S.Ct. 1163, 2 L.Ed.2d 1488].) They assert that the will can reasonably be interpreted as referring only to parents who have been unlawfully convicted for engaging in constitutionally protected activity and that thereby any question of illegality can be avoided.
 We need not search for any such limitation in the language of the will to sustain the trust. We may assume that the testator intended to benefit the children of those convicted of even valid laws of which he disapproved and that his motive in part at least was to encourage challenges to such laws by violations of them. [7] It is the purpose for which the property is to be used, however, not the motives of the testator that determines whether a trust is a valid charitable trust. (Estate of Butin, 81 Cal.App.2d 76, 83 [183 P.2d 304]; Matter of Frasch, 245 N.Y. 174, 182 [156 N.E. 849]; Archambault's Estate, 308 Pa. 549, 555 [162 A. 801]; Woodstown Nat. Bank & Trust Co. v. Snelbaker, 136 N.J.Eq. 62 [40 A.2d 222, 224], affd., 133 N.J.L. 256 [44 A.2d 210]; Jackson v. Phillips, 96 Mass. (14 Allen) 539, 568-569; see Estate of Loring, 29 Cal.2d 423, 434- 435 [175 P.2d 524]; In re Little's Estate, 403 Pa. 534 [170 A.2d 106, 107-108]; Chamberlain v. Van Horn, 246 Mass. 462, 464 [141 N.E. 111]; Baker v. Hickman, 127 Kan. 340 [273 P. 480, 481, 68 A.L.R. 743]; Rest. 2d Trusts, 368, com. d; 4 Scott on Trusts [2d ed.] 348, 368, pp. 2551, 2628; 2A Bogert, Trusts and Trustees, 364, pp. 30-34.) *725
 [8] Assistance to the minor beneficiaries of the trust in this case is a valid charitable purpose. The risk that such assistance may serve to encourage crime is far more remote than that which the Legislature itself may have created by provision for the care of children that extends to those of convicted prisoners. (See Welf. & Inst. Code, 1500.) The benefit to society offered by the testator transcends whatever criticism there may be of his motives, which have died with him.
 The order is reversed. The appeal from the order denying the motion for new trial is dismissed. (Prob. Code, 1240; Estate of Duke, 41 Cal.2d 509, 515-516 [261 P.2d 235].)
 Gibson, C. J., Peters, J., and Dooling, J., concurred.
 WHITE, J.
 I dissent.
 Undoubtedly a valid trust may be created where its purposes are to effect changes in existing laws. (See 4 Scott on Trusts [2d ed.] 374.4, p. 2677; 2A Bogert on Trusts, 378, pp. 168-170.)
 As was said by this court in Collier v. Lindley, 203 Cal. 641, 650-651 [266 P. 526]: "The trend of modern authority has been toward the upholding of trusts which have for their object the creation of a more enlightened public opinion, with a consequent change in laws having to do with human relations and rights in a republic such as ours. ... To hold that a change in a law is in effect an attempt to violate that law would discourage improvement in legislation and tend to compel us to continue indefinitely to live under laws designed for an entirely different state of society. Such view is opposed to every principle of our government based on the theory that it is a government 'of the people, by the people and for the people,' and fails to recognize the right of those who make the laws to change them at their pleasure when circumstances seem to require. With the wisdom of the proposed change the courts are not concerned."
 However, recognition cannot be given to a trust as valid where its purpose is illegal. Therein lies the vice of the trust now engaging our attention. It not only encourages but offers an inducement for violation of the criminal law. In the Restatement of Trusts is found the following cogent statement: "A trust which tends to induce a breach of the criminal law is invalid. Thus, a trust of property to be applied to the payment of fines of persons convicted of criminal offenses ... *726 is invalid." (Emphasis added.) And in 4 Scott on Trusts (2d ed.) section 377 at page 2729, it is said: "A trust cannot be created for a purpose which is illegal. The purpose is illegal if the trust property is to be used for an object which is in violation of the criminal law, or if the trust tends to induce the commission of crime, or if the accomplishment of the purpose is otherwise against public policy. Questions of public policy are not fixed and unchanging, but vary from time to time and from place to place. A trust fails for illegality if the accomplishment of the purposes of the trust is regarded as against public policy in the community in which the trust is created and at the time when it is created. Where a policy is articulated in a statute making certain conduct a a criminal offense, then, of course, a trust is illegal if its performance involves such criminal conduct, or if it tends to encourage such conduct. Thus, in an early English case a bequest to trustees 'to make seats for poor people to beg in by the highway' was held invalid since such begging was a criminal offense."
 "A trust is illegal, even if it does not involve the performance of an illegal act by the trustees, if the natural result of the performance of the trust would be to induce the commission of crime. Thus a bequest to purchase the release of persons committed to prison for nonpayment of fines under the game laws was held illegal." (Emphasis added.)
 In my opinion, it would do violence to reason and challenge credulity to say that the object of the trust with which we are here concerned is to bring about a change in the law by lawful and orderly means. On the contrary the testator, with care and precision, undertook to instruct his trustees that those who would violate certain named existing penal statutes, or commit any crime or misdemeanor which the testator terms "of a political nature," and is convicted thereof, were to be rewarded by the furnishing of aid to their children. That the trust property in the case at bar was to be used in the performance of the trust to encourage if not induce the commission of crime, to me seems manifest, and therefore, consonant with the foregoing reasoning and authorities, it cannot be held to be a valid charitable trust.
 I would affirm the judgment.
 Schauer, J., and McComb, J., concurred.
 "1. The prosecution, conviction and incarceration resulting from a purported violation of any federal, state or local statute, ordinance or regulation, seeking to proscribe, limit, abolish, enjoin or regulate the teaching, advising, adopting, advocating or implementing any political, geopolitical, or social-political doctrine, thesis, theory or philosophy, or speaking or writing in support thereof. I cite the Smith Act of the Federal Government and the prosecutions resulting thereunder as an example of this paragraph."
 "2. The prosecution, conviction and incarceration resulting from any contempt citation arising out of the refusal to answer any question or questions concerning the religious, social, economic or political opinions, beliefs, persuasions or affiliations, past and present, as may be propounded by any federal, state or local committee or sub-committee, or by any legislative committee of any state or municipality or of the Congress of the United States. I cite the appearances before the Un-American Activities Committee or the Internal Securities Committee of the United States Congress and subsequent prosecutions flowing therefrom as appropriate examples of this paragraph."
 "3. The prosecution, conviction and incarceration resulting from the refusal to execute any affidavit, certification or other statement, whether under oath, or not under oath, requiring [sic] into the political affiliations, beliefs or association of the affiant; or the prosecution, conviction or incarceration which may result from the execution of a purported false statement, affidavit or certification as to the past or present political affiliations, beliefs or associations of the affiant. I cite the prosecutions under the non-Communist affidavit of the Taft-Hartley Act, or the prosecutions flowing from the McCarron-Walters Immigration Act, or the prosecutions and proceedings filed under the so- called Broyle's Bill of the State of Illinois, or prosecutions pursued by the Un-American Activities Committees of the various states as appropriate examples of this paragraph."
 "4. The prosecution, conviction and incarceration resulting from any activity in the organization, or assisting in the organization, of any trade union movement; or from the violation of any injunction of any court, restraining, enjoining or limiting in any way the activities of any union of working men and women in the United States, or restricting and limiting the right to collectively bargain or go out on strike."
 "The above examples are cited for illustration purposes only, so as to enable and assist my said Trustees to determine what, in their own collective opinion, shall constitute a crime or misdemeanor of a political nature, in accordance with the uses and purposes of this trust. It is my intention, however, and I do by these presents vest in my said Trustees the full and complete power and authority to determine according to their sole and best judgment what is now, or what in the future may constitute, conviction of a crime or misdemeanor of a political nature. I am aware and cognizant that the law is an ambulatory institution and accordingly is subject to constant change. I anticipate that subsequent to the execution of these presents or subsequent to the date of my demise, laws, statutes and regulations, other than those presently in full force and effect, may be adopted by the Congress of the United States or by the respective legislatures of the several states, which will or may be calculated to limit, abolish or circumscribe the field of activity in unorthodox or unpopular political or economic causes or philosophies; and that people will be arrested, convicted and imprisoned as a result therefrom. Accordingly, and with full cognizance of this eventuality, I hereby endow my said Trustees, in their sole discretion and in accordance with their best collective judgment, to determine who shall receive the benefits of this trust estate. My only stipulation to my said Trustees is that the recipients be the minor Negro children of such defendants. ..."
 "I am aware of the unusual and unorthodox provisions in this testament generally, and particularly with regard to the creation of the trust estate, and the purposes and uses for which it is created. Unorthodoxy or lack of conformity have never been a deterrent or governing factors in my life. They shall play no governing or deterring role in my death or in the disposition of my estate after death. Nevertheless, some small word or mention should be made by way of explaining the reasons and basis for the creation of the trust estate set forth herein and created hereby."
 "I have always believed in the full, complete and unabridged freedom of expression in a democratic society, including (but not limited to) freedom to write, freedom to espouse and freedom to advocate. To limit these freedoms to the majority, or to confine these freedoms to the protagonists of the orthodox or popular, is to negate or abolish the whole democratic concept of freedom of expression; for in the final analysis, the majority, the orthodox and the conformists have no need for this legal immunity or protection--they already have it. It is the minority, the unpopular, the advocate of the unorthodox who requires and who must have the unabridged and inalienable right to differ and be heard."
 "In my lifetime, I have, from time to time, been associated and affiliated with causes, campaigns, beliefs and organizations advocating or espousing unorthodox or unpopular concepts, and I have lived to see many of these concepts and philosophies accepted and heralded many years later as part of the social, political and economic progress of our society, fully accepted and recognized as natural and respectable concomitants of the democratic processes. Yet during the early struggles on behalf of these same causes or beliefs, men and women were persecuted, ostracized and sometimes jailed, and their families left destitute and devoid of all means of support and maintenance. I have learned from a long line of such experiences that there are occasions when to differ or to dissent may well place one's own security and the security of one's family in jeopardy. However, I have also learned that irrespective of this jeopardy, certain brave and intrepid men and women will always insist on being heard, their personal security notwithstanding."
 "It is because I wish to preserve the right to dissent, the right to differ and to be different, that I have created the trust estate set up in this will. It is my last contribution to a more democratic way of life for all people."
 "The right to disagree, the right to dissent, the right to be different, these are warp and woof of the fabric of democracy, they are the fertilizers that feed and nurture the tree of liberty and freedom."
NOTES
[fn. 1] 1. "In order to clarify my intention and make clear to my Trustees what I mean or intend to be meant by crimes or misdemeanor of a political nature, the following examples are offered for the guidance of my Trustees: