DUMEY, Defendant in Error, v. SCHŒFFLER AND WIFE *et al.*,
Plaintiffs in Error.

1. A *testamentary disposition* by a husband, of either real or personal property, to his wife, to be void upon her marrying again, is not against public policy, but is a valid disposition under the law of this state.
2. A will contained the following provision: " I give and bequeath unto my wife, Sarah, the whole of my estate, both personal and real, during her life or widowhood; but if my wife should again marry, so soon as the same takes place my whole estate, both real and personal, I give and bequeath to John and Sarah Dumey, a boy and girl living with me, to be equally divided among them:" *held*, that upon the marriage of the testator's widow the real estate devised passed to and vested in John and Sarah Dumey.

*Error to Chariton Circuit Court.*

In this suit John Dumey, claiming under the will of one Frederick Henneger, prays for a partition of certain lands, which he alleges passed to and became vested in himself and one Sarah Dumey, a defendant, under said will. Sarah Dumey, by her guardian, answered, admitting the alleged right of plaintiff and making a similar prayer. Schœffler and Sarah his wife also answer, setting up the devise by Henneger to his wife Sarah, defendant in the present suit and wife of Schœffler. It is alleged in the answer that the said widow of Henneger took out letters of administration upon his estate, and administered upon the same, and paid all the debts, and made a final settlement with the county court. The answer then proceeds as follows: " And on said final settlement there was a balance found in her favor of $1380·10, which these defendants now pray the court to cause to be paid to said defendants out of the real estate in the petition mentioned, in case the same be considered as the property of plaintiff and his sister, Sarah Dumey, by virtue of the will of Frederick Henneger, deceased; and defendants further aver that the said final settlement was made before the intermarriage of the said Sarah Henneger with the said Schœffler. Defendants also stated

that the said Frederick Henneger and the defendant, Sarah, had no issue of their marriage, nor had the said Henneger any issue of any former marriage at the time of his death; and these defendants now insist that by virtue of the paper proved as the last will and testament of Frederick Henneger, the former husband of the said Sarah, she was and now is entitled to said real estate, mentioned in the petition of, plaintiff for and during her natural life; and that the part of said last will and testament which requires her to surrender said property to the plaintiff and his sister Sarah Dumey, upon her the said Sarah's marriage with the said Schœffler, is void, it being an attempt to restrain her in the exercise of her personal and legal right of forming the connexion of marriage at pleasure.

The portion of defendant's answer above quoted was stricken out on the motion of plaintiff, and this constitutes the error complained of. The will of said Henneger is as follows: "Know all men by these presents, that I, Frederick Henneger, of the city of Brunswick, county of Chariton, and state of Missouri, do make and publish this, my last will and testament, hereby revoking all former wills by me made; and first, it is my will and desire that all my just debts be first paid out of my estate, and secondly, I give and bequeath unto my wife Sarah, the whole of my estate, both personal and real, during her life or widowhood; but if my wife should again marry, so soon as the same takes place, my whole estate, both real and personal, I give and bequeath to John and Sarah Dumey, a boy and girl living with me, to be equally divided among them; and after the death of my wife (if she remains unmarried), I give and bequeath my said whole estate to the said boy and girl, John Dumey and Sarah Dumey; and my said wife, out of my said estate, during her widowhood or life, is to give to said John and Sarah Dumey a support and education. My will and devise is, that my said wife keep my estate together, and manage and control the same as she may think proper, during her life or widowhood; but so soon as she marries again or dies, I give and bequeath my said estate to the said John and Sarah.

*Thirdly*, I appoint F. M. Reinhart executor of this my last will and testament. In testimony whereof," &c.

*Clark*, for plaintiffs in error.

*Turner*, for defendant in error.

LEONARD, Judge, delivered the opinion of the court.

Walsh v. Matthews and wife (11 Mo. 134), determined here in 1847, is a direct authority in point, and must control our present judgment. That case is not shaken by the subsequent case of Williams and Williams against Cowden, (13 Mo. 211,) from which it is clearly distinguishable. The first is a condition annexed by a husband to restrain the marriage of his widow, and the second by a father in restraint of the marriage of his daughter. Both were annexed to testamentary dispositions of real property; and the first was allowed and the second declared to be unlawful as being against public policy; and although the point is settled by the previous judgment of this court, yet as the matter has been argued somewhat at large, we have re-examined the question and are entirely satisfied with the first decision.

The doctrine that all restraints on marriage are against public policy came from the Roman law, and thence through the canon law was partially incorporated into the common and equity law of England; and by reference to Ayliffe's Pandect of the Roman civil law (a short extract from which is here inserted), it will be seen that the distinction between first and second marriages, recognized in the two cases to which we have referred, was made at an early day in both the civil and the canon law—" The ancient law rejected the condition (not to marry) almost without any distinction, as being contrary to the procreation of children, and the advantage of the state, for such was the judgment then that marriage ought not to suffer by any impediment. For though it be for the interest of the state that the testator's will should be observed in other respects, yet the wisdom of men has thought it more for the advantage of the

commonwealth in this case that the same should be peopled by a lawful offspring." And Baldus well observes, " that the good of the public rather consists in marriages than in a state of continency, it being the interest of a state to have as many subjects as possible. And this is to be observed in *all first marriages*; but in *second marriages, the condition is to be fulfilled and performed*; for widows are praiseworthy that content themselves with one husband, as being a pattern of chastity and modesty ; because a second marriage, according to the canonists, is a kind of fornication which yet is permitted upon a good account even by the canon law, and therefore they style it an honest fornication. Wherefore, if a husband, leaving a legacy to his wife, adds this condition in, ' if she shall keep her widowhood,' or, ' until she marries a second time,' such condition ought to be observed ; for if she contracts a second marriage, the legacy is forfeited. And it is the same thing even by the canon law, though the apostle says that after the husband's death, the wife is free from the law of her husband." The same distinction is also mentioned in 2 Swinburne on Wills, 481, where it is said that " the prohibition of the first marriage is much more odious in law than the second," and it has also been made and acted upon both in American and English cases. In Scott v. Tyler, (2 Bro. Ch. R. 488,) Lord Thurlow said, " a condition that a widow shall not marry, is not unlawful." In Grace v. Webb, (15 Simon, 388,) the vice-chancellor, in 1846, said, " a man may make a provision for his wife and declare that it shall cease on her second marriage, because it is considered that a husband has a sort of interest to preserve the viduity of his wife for the sake of his children." And in 1852, in Lloyd v. Lloyd, (10 Eng. Law & Eq. Rep. 143,) the chancellor remarked that " the law recognized in the husband that species of interest in the widowhood of his wife as made it lawful for him to restrain a second marriage—that is to say, that the provision which he has made shall cease." In Philips v. Medbury, (7 Conn. 568,) there was a testamentary disposition of land by a husband to his surviving wife as long

12—VOL. XXIV.

as she should remain his widow, and it was held that the rule in reference to conditions in restraint of marriage were not applicable to real estate or *to a widow*. The court declared it to be " very reasonable that a man, leaving a widow with seven children, should be permitted to encourage her by suitable provision in his will to remain single, and not subject his own offspring to the probable evils of a stepfather to waste her substance, and thereby render her less able to support and educate them." A similar disposition of both real and personal estate was made by a husband for his widow in Pennsylvania, in Commonwealth v. Hauffer, (10 Penn. State Re. 350,) and the clause in restraint of her marrying again was held to be valid in reference to the land, which was the only property then in contest; and Gibson, chief justice, in delivering the opinion of the court, observed in his peculiar style, that " it would be extremely difficult to say why a husband should not be at liberty to leave a homestead to his wife without being compelled to let her share it with a successor to his bed, to use it as a nest to hatch a brood of strangers to his blood." Decisions to the same effect were made in Kentucky, in Vance v. Campbell's heirs, (1 Dana, 229,) and in Copage v. Alexander's heirs, (2 Black. 314,) and in Mississippi, in Pringle v. Durkley, (4 S. &. M. ——.) It is true it was decided otherwise in Massachusetts, in Parsons v. Winslow, (6 Mass. 178,) but the distinction between first and second marriages was not noticed in the case. And in Marples v. Bainbridge, (1 Mad. Ch. R. 317,) which was a bequest of personal property by a husband to his wife, on a condition subsequent, to be void if she married again, it was holden by vice chancellor Plumer that the condition was void, being in restraint of marriage, and that the wife was entitled notwithstanding her second marriage; but these are the only decisions to this effect that we are aware of. The weight of authority is decidedly in favor of the distinction between first and second marriages, and we think it is founded in much practical good sense. Our law having made provision for the support of the wife out of her husband's estate, which he is not allowed to

control by his will, it seems but reasonable to allow him the privilege of disposing of the residue of his property as his judgment shall deem best for the interests of his family. The wife may reject the scheme he has provided for their support and government after his death, so far as her rights of property are concerned, if she prefer the dower allowed her by law. But after she has made her election to take under the will by omitting to renounce its provisions, she has no cause to complain that she is held to her own choice, and not allowed upon her subsequent marriage to enjoy *absolutely* the larger estate, that was given to her by her husband conditionally, under the expectation that if she kept the condition and remained unmarried she would devote herself and what she possessed to the well-being of the family of which she was the surviving head. This distinction, too, has a place in the habits and sentiments of our people ; such dispositions of property are of very frequent occurrence, and are approved by the common judgment of the community. Although in the case now before us, there were no children, there were yet two young persons, to whom, as we may infer, the testator and his wife stood in the place of parents, and all the property, real and personal, was given to the wife during her life or widowhood, and she was directed to keep it together and to manage it as she pleased, supporting and educating these children, to whom it was to go upon her death or marriage. The widow having married again, the new husband and wife insist that the condition is void upon the ground of the public policy in reference to marriage, and that she is therefore entitled under the will to all that is there given to her, notwithstanding her refusal to comply with the condition. We remark here that in determining upon the validity of any condition of marriage under the English law, it is necessary to make several distinctions—as between real and personal property—between conditions precedent and subsequent—between a limitation and a condition, and between a condition followed by a limitation over to a third person, and one without such limitation over. And accordingly, if the disposition be of

real property, and the restraint in the form of a limitation—and not of a condition, *as during widowhood*—it is valid, and the estates cease upon the marriage. And so too, although as a general rule a condition annexed to a testamentary disposition of property, either real or personal, for life, to be void if the party marry, is void as a general restraint on marriage ; yet if there be an immediate limitation over to a third person, it is valid as a conditional limitation ; and upon the happening of the event, the first estate ceases, and the limitation over takes effect. (Parsons v. Winslow, 6 Mass. 181.) And although the present judgment might be put upon some one of these grounds, we prefer placing it on the same ground that controlled the decision in Walsh and Mathews, and, disregarding the distinctions to which we have referred, to declare, as was in effect declared in that case, that a testamentary disposition by a husband, of either real or personal property, to his wife, to be void upon her marrying again, is not against public policy, but a valid disposition under our laws. This being the general rule must apply to every such case, without reference to the question, whether, in the particular case, there be children of the marriage, or a provision in the will for the wife, in the event of her marrying again.

In reference to the claim set up by the plaintiffs for the money allowed the widow against the estate by the probate court, enough is not disclosed to enable us to say that she is entitled to it, even if it be admitted that such a demand could be brought forward in this case as a ground of defence. Her rights in this particular will not be precluded by the present judgment, but she will be at liberty to institute such proceedings in reference to them as are appropriate to her case, unprejudiced by any thing done here.

The result is, the judgment must be affirmed.