## No. 13,733.

### Estate of Clarke.
### Clarke, Executor *v.* Clarke et al.
(57 P. [2d] 5)

Decided February 24, 1936. Rehearing denied April 27, 1936.

Mr. JACOB L. SHERMAN, Mr. PHILIP HORNBEIN, for plaintiff in error.

Mr. HAMLET J. BARRY, for defendants in error.

*En Banc.*

MR. JUSTICE YOUNG delivered the opinion of the court.

THE questions presented for consideration in this case arise on a petition filed in the county court of the City and County of Denver by Eugene W. Clarke, a son and heir of Viola A. Clarke, deceased, herein called the petitioner, to construe certain portions of the will of deceased, which will, prior to the filing of such petition, had been admitted to probate. After a hearing in the county court in which the provisions sought to be construed were held valid, the matter was taken to the district court ·on appeal, where the will was held invalid as to the questioned portions and judgment entered accordingly. The executor brings the cause here on error.

Viola A. Clarke died leaving two sons, George K. Clarke—who now is the duly qualified and acting executor of the will of said deceased—and Eugene W. Clarke, and three grandchildren, Eleanor Hicks, Marian Hicks and Robert C. Hicks as her heirs at law, all of whom are named as beneficiaries under her will.

The will contained certain specific bequests and legacies other than the provisions which the court was asked to construe, the latter being contained in paragraphs 5 and 6, which so far as material here, are as follows: "(5) In case my son, Eugene W. Clarke's present wife is dead, or has otherwise ceased to be his wife, then I hereby give, devise and bequeath all my residuary estate in three (3) equal shares, as follows, viz.: * * * one third (⅓) to my son * * * Eugene W. Clarke, absolutely; * * *

"(6) In case my son Eugene W. Clarke's wife is still living and is still his wife at the time of my death, then I

hereby give, devise and bequeath to my son Eugene W. Clarke the sum of Five Thousand ($5,000.00) Dollars, absolutely.''

The district court held that the aforesaid provisions of the will are contrary to the public policy of the state, repugnant to public morals, and that they therefore are void and of no effect. The plaintiff in error contends that in so finding the trial court was in error.

After the cause was brought to this court the petitioner, one of defendants in error, filed a motion to dismiss the writ of error on the ground that the executor of the estate of said deceased has no power or authority to have the judgment of the trial court reviewed. If the executor is without right to appear in this court, there is nothing pending before us, and the judgment of the trial court must be affirmed. We shall therefore first dispose of this contention.

 After a careful review of the authorities cited by both parties in their briefs, we hold that the executor, as such, has a right to appear and prosecute a writ of error in the case. Section 5220, C. L. 1921, in so far as here material is as follows: ''* * * *In case any such will so presented* by the executor or executors thereof *shall be contested,* such executor or executors shall, *when acting in good faith to establish such will, be entitled* at the expense of such estate to *employ* counsel and *incur* such other reasonable *expense* as may be necessary to *prove or attempt to prove such will;* Provided, That the amount of such expense and the necessity for and character thereof shall be subject to the approval of the county court; and, Provided, further, That if any executor or executors shall seek to have reviewed the judgment of *any court* declaring void such will, such executor or executors shall not be entitled to charge against the estate any expense of such review, if the judgment of such court shall be affirmed.'' (Italics ours.)

The petitioner contends that the foregoing section

authorizes the executor to have reviewed the judgment of a court declaring a will void only "in case any such will so presented by the executor or executors thereof shall be contested," the *caveat sustained and the will in toto denied admission to probate.* Section 5211, relating to the contest of a will, provides that the contestant "shall file in the county court a caveat or objections, in writing, which objections * * * shall be divided into two classes, to-wit:

"First—All such objections as may raise the issue as to whether the writing in question be the last will of the testator or testatrix or not, which issue shall first be tried by a jury, unless waived, according to the practice in civil actions.

"Second—All such objections to the legality of the contents of such will which then exist and could then be raised and determined in any other action, which class of objections shall, if such instrument be found to be a will, be heard and determined by the court, before such will be formally admitted to probate, and if, upon the hearing of such second class of objections, the court shall determine that any portion of the contents of such will is void, the court shall admit such will to probate, in so far as it shall be found to be valid and binding, and it shall be executed only in so far as its contents may be held to be valid and binding; and any portion of such estate not conveyed by such will because of the invalidity of any portion of its contents shall be held to be intestate property, to be administered as such, by the executor or administrator with will annexed, appointed to execute such will. If the entire contents of such will be held void, such estate shall be administered as in other cases of intestacy."

It clearly appears from the foregoing section of our statutes that a will may be denied admission to probate "if the entire contents of such will be held void," and the whole estate administered as intestate property, or the will, if found to be only partially invalid, may be ad-

mitted to probate and only that portion of the property attempted to be passed by the invalid portion of the will administered as intestate property. In a recent case before this court, *Jeffreys v. International Trust Co.*, 97 Colo. 188, 48 P. (2d) 1019, a case involving the contest of a will, which was attacked on the ground that it was void and of no effect, we used the following language: ''Whatever may be the law in other jurisdictions where there are no such provisions as we have in sections 5211 and 5213, supra, the court, in proceedings to probate a will in this state, has power to pass upon all objections made in the caveat to the legality of the contents of the will, and is required to do so; and if a portion of the contents of the will is void and the rest valid and binding, the will must be admitted to probate only as to the part that is valid and binding; and if the entire contents of the will are held to be void, the will must be denied probate and the estate must be administered 'as in other cases of intestacy.' Such is the effect of sections 5211 and 5213, supra.''

In the light of the foregoing holding, that the question of the validity of a will in whole or in part may be raised by a caveat against its admission, and since the right to review the judgment of a court invalidating a will in whole or in part when presented for probate is granted by statute (§5220, supra), it would be inconsistent to hold that the executor might have a judgment invalidating a will in whole or in part reviewed when entered on a caveat challenging the validity of the will; but that he might not have reviewed a judgment in a proceeding to construe the will brought by the same person, urging exactly the same objections that he might have urged on a caveat to its admission. So to hold would leave it to the one challenging the validity of a will to determine whether the executor might have a judgment invalidating it in whole or in part reviewed. If raised on a caveat against its admission there could be a review; but if raised in a proceeding to construe, there

could be no review. Such is the tenor of petitioner's contention, with which we cannot agree. In either case the executor, under the statute, runs the risk of having charged against him personally the costs of such review in the event of his failure to secure a reversal of the judgment of the lower court.

In *Hurd v. Reed*, 260 Ill. 154, 102 N. E. 1048, the court said: "It is the duty of an executor to defend the will. As was said by this court in *Pingree v. Jones*, 80 Ill. 177: 'He owes this, at least, to the memory of the dead, who placed confidence in him. * * * To do otherwise would be a gross dereliction of duty.' " To the same effect is *In Re Baxter's Estate*, 94 Mont. 257, 22 P. (2d) 182.

The Colorado cases cited by petitioner against the right of the executor to have the judgment reviewed are distinguishable from the case at bar.

*Barth v. Richter*, 12 Colo. App. 365, 55 Pac. 610, involved a contest between three children by a second marriage and five children by a former marriage as to a right to take a certain indebtedness due the testatrix. The executor, as was pointed out, was "merely the disinterested holder of a fund, the right to which was in dispute between others." He brought the contending parties into court and they tried out their dispute. *No part of the will was held invalid.* What was indefinite before was made definite and certain by a court decree and whether the property was given to one set of children or the other was no concern of the executor, if payment was made in accordance with the will. It will be observed that section 5220, C. L. 1921, supra, which was passed in 1915, amended revised statutes of 1908, section 7103, which last-mentioned section was section 41, chapter 181, page 484, Session Laws of 1903. In the 1903 act there was no provision for review. *Barth v. Richter, supra,* was decided prior to 1903, while the provision permitting review was not added until 1915.

*Virden v. Hubbard*, 37 Colo. 37, 86 Pac. 113, does not involve the action of an executor at all. A review of the

judgment construing the will of John M. Mills was sought by the administrator of the estate of Nancy M. Bryans, and under the particular facts of that case it was held that the administrator of the estate of Nancy M. Bryans could not appeal from the judgment of the court construing the provision of the will of John M. Mills, deceased, which involved only real estate.

*Reddington v. Reddington,* 66 Colo. 485, 180 Pac. 675, did not involve either a will or an executor. The administratrix sought to have herself adjudged the sole heir. Others intervened, claiming that they were children and heirs of the decedent. The court found for the interveners and adjudged that each was an heir of the deceased. From this statement of the facts it appears that the case had nothing to do with an executor's duty or authority in defense of a will.

*Fenn v. Knauss,* 87 Colo. 175, 285 Pac. 945, involved an order of partial distribution of assets before the statute of nonclaim had barred further claims against the estate. No question was raised as to the validity of the will, nor as to who should receive. The only matter involved was whether it was proper to distribute any part of the estate at the time such distribution was ordered. We held that the executor had no interest, such as would entitle him to a review.

Having determined that the executor has a right to seek a review of the judgment of the trial court, it becomes necessary to determine the cause on its merits. Are the provisions of the will hereinbefore quoted void as against the public policy of the state, in that they offer an inducement to Eugene W. Clarke to sever the marriage relation with his wife Clara Clarke?

Considerable testimony was taken on the hearing to the general effect that in 1926 there was a very bitter feeling existing between the testatrix and Clara Clarke, the wife of the petitioner, Eugene W. Clarke. There also was some difficulty between Clara Clarke and her husband which culminated in her bringing suit for separate

maintenance against her husband, and an action for alienation of affections in the sum of $100,000 against her mother-in-law, the testatrix. In the complaint filed in the latter case it was alleged that the mother-in-law was at that time worth $100,000, and judgment was asked in that amount. These suits were later withdrawn and a reconciliation effected between Eugene W. Clarke and his wife. The bitter feeling between Clara Clarke and her mother-in-law appears to have continued for two and a half years, during which time neither of the women had anything to do with the other, and it was during this period that the will was written. In 1929 they to some extent composed their differences and Eugene W. Clarke and his wife went to live with the testatrix, making their home with her until her death on August 29, 1933. During this time we may assume from the record that the relations between the two women were friendly and that Clara treated her mother-in-law with the care and consideration usually given a mother by her own daughter. As we read the record the testimony has little if anything to do with the issues presented by the assignments of error. We have referred to it because it shows what probably originally motivated the testatrix in putting into her will the terms and conditions resulting in this controversy.

We preface our consideration of the question as to whether or not the provisions of the will giving to Eugene W. Clarke one-third of the residium of the estate if his wife Clara Clarke "is dead, or has otherwise ceased to be his wife," but in case his "wife is still living, and is still his wife at the time of * * * death," giving to him $5,000 absolutely, and no more, are void, by calling attention to the fact that the record is silent as to the present value of the estate; however, we may assume that it is of such value that one-third of the residium will exceed $5,000, otherwise Eugene W. Clarke would be defending instead of attacking the will. We mention this

fact to show that the varying fortunes of the testatrix might very well have created a situation in which the will as written would have left an inducement to Eugene W. Clarke *to remain* the husband of his wife until the death of the testatrix.

██ ██ It is a familiar and well settled principle of law that a will speaks as of the time of death or as though it had been written immediately prior to death. If we assume, as we must, that this will does so speak, it cannot contravene the public policy of the state, if it does, until it begins to speak. The contingency on which the petitioner would receive $5,000 was that the wife be living and still his wife at the time of the death of the testatrix. The contingency on which he would receive one-third of the residium was that his wife should have predeceased the testatrix or that at the time of the death of the testatrix his wife should have ceased to bear that relationship to him. After the death of the testatrix, the time at which the will began to speak, there was nothing that Eugene W. Clarke could do to increase or diminish the amount he would receive under the will. His portion was fixed absolutely as of the time of the death of the testatrix and his then status with respect to his wife Clara. There was then no inducement for him to destroy the marriage status, for it could avail him nothing. A will written and executed is merely the expression of an intention to dispose of one's property in a certain way in the future, provided one does not have a change of mind. Death ensues, thus making a change of mind impossible, before such expressions of future intention bring rights into existence. If the expression of an intention to dispose of property in the future takes into consideration a status of the beneficiary that may come about by natural means, or be lawfully brought about, we cannot say that one's bounty shall not be conditioned on such status existing at the time of death. Two people married may have that relationship terminated in only two ways, by

death or divorce. Death may come about naturally or be criminally produced. Divorce may lawfully be procured and, of course, under certain conditions, might be unlawfully granted. We cannot assume that the testatrix intended that her son should, by criminal or unlawful means, bring about an unmarried status whereby he would take the larger gift when such status might result from natural causes or be lawfully effected. We must concede the right of a testator to condition his bounty on any status or situation not existent at the time of drawing his will that may naturally or lawfully come about *prior to his death.*

The petitioner cites a large number of cases in support of his contention that the conditions in this will violate the public policy of the state and are void. All of these cases are distinguishable from the case at bar.

*Brizendine v. American Trust and Savings Bank,* 211 Ala. 694, 101 So. 618, involved a will in which a testatrix gave one-half of her real estate to her son provided ''he will reform, and give up living with, or having anything to do with this Mrs. Moore by name, whom he now lives with * * * and he * * * shall not have a dollar of my real estate unless he forsakes her (Mrs. Moore) and has nothing to do with her for a period of seven years * * * then I bequeath him * * * the other half of all my estate.'' At the time the will was executed the son and his first wife were divorced; the court permitted him to remarry; he had legally married the Mrs. Moore mentioned in the will, and they were then husband and wife. It is apparent that here was a continuing inducement to destroy a lawfully contracted marriage, and the court properly held that the condition was void.

In *Tripp v. Payne,* 339 Ill. 178, 171 N. E. 131, the will contained this provision: ''The residue of the income shall be accumulated for a period of twenty-one years after my death, provided, that in case the present wife of my son, Fred Tripp, shall die during said period or in

case the said Fred Tripp shall cease to live with his present wife, then the net income arising from said trust shall be paid to the said Fred Tripp during such time as he shall not live with his said wife." It will be observed that under this bequest it was within the power of the beneficiary by his conduct subsequent to the death of the testatrix to determine whether he should receive the income from the trust fund or not. If he lived with his wife he received no income. If he lived apart from her he received the income. Here clearly was a continuing inducement to destroy the marriage status and the court rightly held the provision void.

*In re Haight's Will,* 64 N. Y. Supp. 1029, involved a trust, and contained a provision for the payment of $2,000 a year from the income to a son for life, with the further provision that so long "as the present wife of my said son shall be living, and he shall be lawfully bound to her as a husband, the income to be paid to my said son shall not exceed the sum of two thousand dollars in any one year; and that in case of the death of said wife, or in case of his ceasing to be bound to her as a lawful husband, then the whole of said income is to be paid over to my said son during his natural life." The provision was held void as being against public policy. This perhaps is the strongest case cited in support of petitioner's contention, but it will be observed that in this case it was within the power of the beneficiary by changing his status subsequent to the death of the testatrix to secure a financial advantage. In the instant case the right of the beneficiary became fixed at his mother's death and nothing he could do thereafter would profit him in any way whatsoever.

*In re Hutchins' Estate,* 263 N. Y. Supp. 896, a trust was involved providing for the support and maintenance of a daughter "but only if she be separate and apart from her husband." The court evidently construed the provision to mean that the beneficiary was to receive the income from the trust, if at any time and so long as she remained

separate and apart from her husband. So construed, it might be said to be an inducement to her to remain separate and apart from him and consequently against public policy, but again it is clear that this case is distinguishable from the case at bar on the facts.

*Witherspoon v. Brokaw*, 85 Mo. App. 169. The court held the following provision void as against public policy: "I will and devise to my niece, Emma Witherspoon, * * * to have and to hold to her sole use and benefit so long as she may live separate and apart from her husband, Herbert Witherspoon, and no longer, and upon her reunion with him to vest, freed of this devise in my son Charles O. Brokaw." Again it appears that it was within the power of the beneficiary by her act subsequent to the death of the decedent to determine whether she would or would not receive under the will. This distinguishes the case from the one here under consideration.

Of like character was the provision under consideration and held void in *Conrad v. Long*, 33 Michigan 78: "I give and bequeath to my sister, Elizabeth Long, upon this condition: if at any time subsequent she should conclude not to live with her present husband, Henry Long, as his wife."

*O'Brien v. Barkley*, 28 N. Y. Supp. 1049; *Hawke v. Euyart*, 30 Neb. 149, 46 N. W. 422, may likewise be distinguished from the case at bar in that the provisions in the wills involved held out continuing inducements to the beneficiaries to profit by severing the marriage relation subsequent to the deaths of the respective testators in those cases.

A large number of cases are cited by plaintiff in error, many of which go further than is necessary for us to do in order to hold the provisions of the will here under consideration valid.

In *Baker v. Hickman*, 127 Kan. 340, 273 Pac. 480, the following provisions of the will were involved:

"Second. In the event that at the time of my decease my daughter, Mrs. Corinne Stewart Baker, is still the

wife of L. L. Baker, I give and bequeath to her the sum of one dollar ($1) to be paid from my estate.''

"Fourth. But in the event that my daughter, Mrs. Corinne Stewart Baker, aforesaid, shall at the time of my decease be a widow, or shall have obtained a divorce from L. L. Baker, and shall no longer be the wife of L. L. Baker, then I desire and order that my two daughters, Mrs. Corinne Stewart Baker and Mrs. Frankie Stewart Hickman, shall share equally, share and share alike, in my estate.''

It will be observed in this latter case that the right to take was determined absolutely by conditions as they existed at the time of the death of the testatrix, just as in the instant case. The court in discussing the noted provisions of the will used language that we think applicable to the case at bar. We quote excerpts from the opinion as follows:

"With respect to divorce, our statutes and public policy may be said not to encourage divorce, but our statutes provide for divorces to be granted for specific reasons. In *Daboll v. Moon*, 88 Conn. 387 [91 A. 646, L. R. A. 1915A, 311, Ann. Cas. 1917B, 164], it was said:

" 'It never has been the policy of this state, as it formerly was the policy of the church to compel people married to each other to continue for life in that relation and to cohabit together, regardless of their inaptitude for such cohabitation, and however unfitted they may be in disposition and temperament to mutually perform the duties of the marriage relation. The state does not favor divorces; but allows them for several causes, because it believes the interests of society will thereby be better served, and that its own prosperity will thereby be promoted.'

"The same may be said with respect to our own statute and the public policy of this state. A provision in a will cannot be said to be against the public policy of this state from the simple fact that the gift or devise depends upon whether or not an event has occurred which is in harmony with our statute and the public policy of our state.''

In *Coe v. Hill,* 201 Mass. 15, 86 N. E. 949, the testator devised certain property in trust, the income to be paid to a daughter with the provision that at the decease of her husband or upon her permanent and legal separation from him she should receive the whole principal sum and income then remaining free from any trust. The court said: "It is as if, in making provision for her future welfare, he had said, 'if my daughter becomes a widow,' or 'if because of her husband's marital misconduct she lawfully obtains an absolute divorce, then the trust as to her is to be terminated, and she is to have her share of the property.' The voluntary exercise by a legatee of a right which the law confers is not against public policy, and does not avoid a testamentary gift, the language of which may show the testator had in mind that such a contingency might arise."

In *Cowley v. Twombly,* 173 Mass. 393, 53 N. E. 886, a trust was involved. Testator's son was willed certain property to be held in trust, which was to terminate in the event of the death or divorce of the son's wife, the property then to vest in the trustee free of the trust; but should the wife remain married to, and survive him, all of the trust estate was to pass to a niece of the testator. This provision was attacked as being against public policy. The court in passing upon the question said: "There is here no gift to the son upon a condition that the son should lose the benefit of the gift if he should not separate from his wife, as in *Wren v. Bradley,* 2 DeG. & S. 49, and in *Conrad v. Long,* 33 Mich. 78. What the testator has done is to provide that, upon the son's death, the property shall go to the defendant, unless before the son's death the woman who when the will was made was the son's wife had ceased to be such by reason of death or divorce. That a devisee of a contingent remainder will benefit by the death of the life tenant does not make such a devise void, as against public policy, because tending to induce the remainderman to compass the death of the life tenant. The separation of husband and wife, the mar-

riage continuing, is against public policy. Hence conditions annexed to limitations by settlements or wills, providing that a husband or wife shall lose the benefit of an estate unless they live separate, have been held void. *H. v. W.*, 3 Kay & J. 382; *Cartwright v. Cartwright,* 3 DeG. M. & G. 982; *Wren v. Bradley,* 2 DeG. & S. 49. *Conrad v. Long,* 33 Mich. 78. But while the separation of persons who are husband and wife is against public policy, divorces are provided for, sanctioned and regulated by law. There is no more likelihood or presumption that a divorce will be wrongfully brought about by one of the parties to marriage in order to secure property, than that a death will be so occasioned. A testator no more offends public policy by simply making his bounty contingent upon the occurrence of a divorce than of a death. Judgment on the finding.''

In *Daboll v. Moon,* 88 Conn. 387, 91 Atl. 646, a similar case, the court used these words: ''The present gift was upon alternative conditions, one of which was the death of Willard's wife. It will not be presumed that the testator, in the absence of express language so directing, intended that his son should procure his wife's death. His counsel admit that if the wife's death had been the only condition of the vesting in him of the income, the condition would have been valid. But the will holds out the same inducement to him to procure her death which it does to procure an illegal divorce or separation from her. In *Cowley v. Twombly,* 173 Mass. 393, 397, 53 N. E. 886 [46 L. R. A. 164], where the facts were somewhat similar to those in this case, the court said: 'The scheme of the trust no more tended to induce the son to improperly procure a divorce between himself and his wife, than to induce him to procure her death.' ''

In *Hood v. St. Louis Union Trust Co.,* 334 Mo. 404, 66 S. W. (2d) 837, a trust was involved. The court said: ''Suppose testatrix had provided that the property be deeded to appellant upon her becoming a widow and had omitted the clause 'either by death of her husband or her

divorce from him,' the effect of the will would have been the same. Could it then be argued the provision of the will would be void because it might perhaps be a temptation to an unscrupulous person to either divorce or murder her husband?''

The following cases based on facts similar to those in the instant case also support our holding: *Gunning's Estate,* 234 Pa. 139, 83 Atl. 60; *In re Cornils' Estate,* 167 Ia. 196, 149 N. W. 65; *Rininger's Estate,* 305 Pa. 203, 157 Atl. 488; *Thayer v. Speer,* 58 Vt. 327, 2 Atl. 161.

The questioned provisions of the will are valid. Such conclusion, we believe, is logically correct and supported by decisions of eminent courts in other jurisdictions. For the reasons stated the judgment of the district court is reversed.

All of the justices concur in this opinion in so far as it holds that the executor has a right to have the judgment of the trial court reviewed. As to that portion of the opinion holding that the questioned provisions of the will are valid, MR. JUSTICE BURKE, MR. JUSTICE BOUCK and MR. JUSTICE HOLLAND dissent.