**In the Matter of the 1942 GERALD H. LEWIS TRUST.**

**Mary Ann LEWIS, Plaintiff-Appellant,**

v.

**COLORADO NATIONAL BANK and Gerald H. Lewis, Jr., Defendants-Appellees.**

**No. 81CA0930.**

Colorado Court of Appeals, Div. III.

July 15, 1982.

Rehearing Denied Aug. 12, 1982.

Arkin, McGloin & Davenport, P.C., Harry L. Arkin, Fotios M. Burtzos, Denver, for plaintiff-appellant.

Sherman & Howard, Constance L. Hauver, W. David Pantle, Denver, for defendants-appellees.

KELLY, Judge.

Plaintiff, Mary Ann Lewis, and defendant, Gerald H. Lewis, Jr., are beneficiaries of a trust created by plaintiff's late husband, Gerald H. Lewis, Sr. Defendant Colorado National Bank is the trustee. Plaintiff appeals the trial court's denial of her motion for summary judgment and instruction to the trustee to cease paying income to her should she remarry. We affirm.

In 1942, Gerald H. Lewis, Sr., executed an inter vivos trust which directed the trustee to pay the income to Mr. Lewis for life, and, upon his death, to "pay one half of said net income to my then wife, so long as she shall live and remain unmarried." Ms. Lewis has been receiving income from the trust since 1966 and now wishes to remarry. The trustee informed Ms. Lewis that if she remarried it would cease paying her income from the trust pursuant to the quoted provision.

■ Ms. Lewis argues that the forfeiture-on-remarriage provision is void on public policy grounds as a restraint on marriage. There is no doubt that the public policy of Colorado favors marriage. *See* § 14–2–102(2)(a), C.R.S.1973. However, in interpreting trust provisions, it is also the policy of the law that the intention of the settlor or testator must be effectuated unless it is contrary to public policy or statutory enactment. *First National Bank of Denver v. United States,* 648 F.2d 1286 (10th Cir.1981); § 15–11–603, C.R.S.1973; *In re Estate of Dewson,* 181 Colo. 189, 509 P.2d 311 (1973). Thus, the tension between these two public policies, under the facts of this case, requires that we weigh the relative strengths and choose the stronger policy.

■ While a trust provision divesting the interest of a beneficiary, should she remarry, may be invalid as a general restraint on marriage, such a provision with respect to the remarriage of a widow has generally been upheld. *Restatement (Second) of Trusts* § 62 comment h. The courts have given various reasons for reaching this result, but seem to have been more heavily influenced by history than by analysis. The Romans exempted conditions restraining the remarriage of widows from their rules against restraints, and the English decisions have generally done the same. Browder, *Conditions & Limitations in Restraint of Marriage,* 39 Mich.L.Rev. 1288 at 1298 (1941).

Most American cases dealing with conditions against remarriage take the position that any policy against marriage restraints, if it exists, does not extend to the second marriage. *Browder, supra,* at 1311. Some courts have spoken of a husband's having an interest in his wife's viduity, and other factors include the interests of a testator's children, who might not be so well cared for after their mother's remarriage. *Browder, supra* at 1311. The Missouri Supreme Court declared that "widows are praiseworthy that content themselves with one husband, as being a pattern of chastity and modesty." *Dumey v. Schoeffler,* 24 Mo. 170, 173 (1857). Other courts have premised their validation of such restraints "upon an element of possessiveness, the desire of the testator to compel fidelity to his memory, even after his death." *Restatement of Property* § 426(1) comment c.

Recent cases merely reiterate the rule. *See, e.g., Wilbur v. Campbell,* 280 Ala. 268, 192 So.2d 721 (1966).

This is a case of first impression in Colorado, and, although we reach the same result, we are not persuaded by the reasoning of courts in other jurisdictions. Remarriage is no longer considered unchaste, immodest, or unfaithful, and archaic principles of coverture have been abandoned. Neither is there any meaningful distinction between marriage and remarriage to be found in the public policy favoring marriage. We see no reason to validate a restraint on marriage based on such theories.

However, we cannot ignore the deterioration of the marital relationship in our society over the last several decades nor pretend blindness to changing social attitudes toward the relationship between men and women. The recognition of such societal changes is the genius of the common law, and the recent developments in judicial decisions in response to changed attitudes toward marriage, *see, e.g., Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *Marvin v. Marvin,* 18 Cal.3d 660, 557 P.2d 106, 134 Cal.Rptr. 815 (1976); *see generally* Fineman, *Law & Changing Patterns of Behavior: Sanctions on Non-Marital Cohabitation,* 1981 Wisc.L. Rev. 275 (1981); Willemsen, *Justice Tobriner & the Tolerance of Evolving Lifestyles: Adapting the Law to Social Change,* 29 Hastings L.J. 73 (1977); *but see In re Marriage of Heinzman,* 40 Colo.App. 262, 579 P.2d 638 (1977), *aff'd,* 198 Colo. 36, 596 P.2d 61 (1979), persuade us that the policy of the law favoring marriage is without sufficient vigor to overcome the policy in support of effectuating a settlor's intention.

We agree with the Minnesota Supreme Court, which construed a similar provision in *In re Appleby's Estate,* 100 Minn. 408, 111 N.W. 305 (1907):

> "His ... wife possessed the property, the wealth; and no sound reason can be advanced to sustain the view that she was under legal or moral obligation to provide him with an income with which to support in comfort and luxury a new wife." 111 N.W. at 309.

*See Latorraca v. Latorraca,* 132 N.J.Eq. 40, 26 A.2d 522 (1942); *Knight v. Mahoney,* 152 Mass. 523, 25 N.E. 971 (1890); *Commonwealth v. Stauffer,* 10 Pa. 350 (1849); *Restatement of Property* § 426(I) comment c; I *A. Scott, Trusts* § 62.6 at 585.

Here, the trust provision did not prevent Ms. Lewis from ever marrying anyone, since she had already been married to Mr. Lewis. Neither was it aimed at inducing the destruction of a current marriage. *See Estate of Clarke,* 98 Colo. 321, 331, 57 P.2d 5, 9 (1936). While we recognize that a preference for the policy favoring effectuation of a settlor's intent over the policy favoring marriage may seem an inducement to a relationship once regarded as meretricious, such relationship, if it occurs, is the result of a choice which has always been available to the surviving spouse under such circumstances. It is not the consequence of a judicial choice between conflicting public policies.

Ms. Lewis bases her second argument on the trust provision which states: "In the event that there shall be a complete failure of my issue during the lifetime of my said wife, so long as she shall live and remain unmarried, and upon the death of the survivor of myself and my said wife, *or the remarriage of my widow ....*" Ms. Lewis argues that the use of the word "or" creates a condition subsequent rendering the trust provision void. We disagree. The use of the word "or" in this context is simply a reiteration of a valid limitation placed on the trust. The trial court correctly ruled that a devise of property to one "so long as he or she remains unmarried" is a limitation and not a condition subsequent. *In re Horgan's Estate,* 91 Cal.App.2d 618, 205 P.2d 706 (1949).

The judgment is affirmed.

SMITH and KIRSHBAUM, JJ., concur.