## GORMAN *et al.* v. RUSSELL *et. als.*

VOLUNTARY associations for mutual relief in sickness or distress, by funds raised by initiation fees, fines, dues, etc. are partnerships, and may be dissolved by a Court of Equity if they improperly exclude a member.

If such an association exclude a member from its meetings, because he refuses to take an oath to be administered by the President, which oath was not required by the constitution or the by-laws, and is foreign to the objects of the association, it is ground for a dissolution.

The rule requiring all persons materially interested, to be made parties to a suit, is dispensed with when it is impracticable or very inconvenient, as in cases of joint associations composed of numerous individuals.

APPEAL from the Twelfth District.

Defendants demurred to the complaint on the grounds, that the Court had no jurisdiction either as to the persons of the de-

fendants or the subject matter of the action; that there was a defect of parties plaintiff, and a misjoinder thereof; as also of parties defendant; and that the complaint does not state facts sufficient to constitute a cause of action. From final judgment in favor of defendants on demurrer, plaintiffs appeal.

*Stanly & Hayes,* for Appellant.

1. This association was a partnership, and is so treated in a Court of Equity. (*Loyd* v. *Loaring,* 6 Ves. 772; *Cockburn* v. *Thompson,* 16 Id. 322; *Pearce* v. *Piper,* 17 Id. 8; *Beaumont* v. *Meredith,* 3 Ves. & Beam. 180; Coll. on Part. Sec. 553; Gow on Part. 2, 227; *Babb* v. *Reed et al.* 5 Rawle, 151.)

2. The plaintiffs having been improperly excluded from the association, are entitled to a dissolution and distribution of the funds. (Coll. on Part. Sec. 297, and Note 1; 3 Kent's Com. 67; Gow on Part. 227.)

3. The association had no power to exact an oath from plaintiffs, or impose a new additional qualification on members. " A by-law cannot impose an oath." (Comyn's Dig. By-Law C, 6; Angell & Ames on Corp. 373; Kyd on Corp. 112; *People* v. *Tibbetts,* 4 Cow. 382; Comyn's Dig. By-Law A.)

4. There is no defect of parties defendant. (*Von Schmidt* v. *Huntington,* 1 Cal. 55; Prac. Act, Sec. 14; 16 Ves. 322; Sto. Eq. Pl. Sec. 1356.)

*Merrill, Clement & White,* for Respondents.

Plaintiffs have mistaken their remedy. The complaint shows that the funds of the association are derived from initiation fees, fines, and weekly contributions, and are, by the constitution and by-laws, devoted to specific charitable purposes, and are, therefore, in the nature of donations and bequests to charitable or pious uses at common law. (Sto. Eq. Juris. Secs. 1160, 1191.)

Neither the contributors to the fund, nor the managers, nor the trustees, nor the beneficiaries, have any right to dissolve the association and divide the property; nor have any of the parties a right to receive the benefits of the fund, except that the beneficiaries are entitled to the benefits when they come within the provisions of the by-laws.

The legal and equitable title is gone from the contributors, as

such, and vested in the trustees for the charitable uses limited in the constitution and by-laws of the association, and a dissolu-. tion of the association and an appropriation of the funds among the members, would be a violation of the objects for which they were raised; and it is well settled, that a Court of Equity will not lend its aid to destroy an association whose primary object is to relieve the poor and unfortunate, but will carry out, as far as possible, the original purposes of the contributors. And in cases of gross mismanagement and violation of the trust, upon which the fund was created, the legal and equitable title cannot be re-vested in the original contributors, or their heirs, or legal repre-sentatives, but a Court of Equity has original jurisdiction to en-force the performance of the trust, and compel the trustees to apply the fund to the use of the individuals for whom it was in-tended, and, in case of necessity, to commit the administration to other hands. (*Drake* v. *Fuller*, 9 N. H. 536; *Ref. Dutch Church*, etc. v. *Mott et al.* 7 Paige, 77; *Beal et al.* v. *Surviving Ex'rs of Fox*, 4 Ga. 404; 2 Sto. Eq. Jur. Sec. 1191; *Shotwell* v. *Mott*, 2 Sandf. Ch. 46; *Moggridge* v. *Thackwell*, 7 Ves. Jr. 36; 2 How. U. S. 195.)

Although this association is not a corporation, it is not a pri-vate association, so as to give each member a right, as tenant in common, to a respective share of the property, with power to alienate that share. (*Livingston* v. *Lynch*, 4 John. Ch. 573.) If the members had contributed a fund, and put it into the hands of trustees to be managed for purposes of speculation, the profits to be divided, not among beneficiaries as objects of the charity, but among the donors themselves in proportion to their respec-tive shares, they would be entitled to it as tenants in common, and would have the power of alienating their respective portions and buying in others, and the alienees would be tenants in com-mon, and, at any time, entitled to a division and rateable por-tion of the original fund, with its accumulations.

There is a distinction between tenancies in common in private trusts, and a case of charitable use. (7 Vt. 246; see, also, 7 B. Monr. 611, 618, 621.)

From these authorities, it is evident that this association can-not be dissolved and the funds divided among the members; and if the plaintiffs have been injured or deprived of any right by

the imposition of any new and additional tests of membership, they have their remedy in another form of action but not in this.

A partnership is an association for gain—labor, skill, and capital, being employed for that purpose, and the gain or loss divided proportionally. This is essential and the test of copartnership, and the members may each bind all by contract in reference to the business of the copartnership. But in this case no such right exists; club associations are not partnerships. (*Fleming* v. *Hector*, 2 Mees. & Wels. 171; *Todd* v. *Emly et al.* 7 Id. 426; *Caldecott* v. *Griffith et al.* 22 Eng. Law and Equity, 1527.)

The funds being in the actual custody of the trustees, and by the constitution and by-laws of the association placed under their management, and they having the legal title to them, all suits touching the fund should be brought against them as such trustees, and not against all the acting members of the society.

BALDWIN, J. delivered the opinion of the Court—FIELD, C. J. concurring.

The plaintiffs filed their bill in the District Court to dissolve an association known as the "Riggers and Stevedore's Union Association of San Francisco." The constitution of this association provides for the collection of an initiation fee from the members; also, weekly dues, fines, etc. By the tenth article of the by-laws, it is provided that any member of the association shall, if sick or disabled so as to prevent him from working or pursuing his ordinary business, receive from the funds of the society ten dollars a week, provided such sickness or distress is not brought on himself by improper or immoral conduct. A committee is appointed to visit the sick. By Article twelve, "in case of the death of a brother in good standing, the sum of seventy-five dollars shall be appropriated to defray his funeral expenses, and in case of a brother's wife, forty dollars shall be appropriated; and each brother shall be assessed one dollar to defray the funeral expenses of a brother, and fifty cents for a brother's wife. When funds in the treasury shall exceed two thousand dollars, the assessment shall cease. The members must be twenty-one years of age, and have worked at least six months as a rigger or stevedore."

The bill charges that the plaintiffs are members of this asso-

ciation—that they have been refused admission to the meetings
of the association, and a right to participate in its proceedings,
unless they would agree to take an oath to be administered by
the President—that this was not required by the constitution
and by-laws, and is foreign to the objects of the association—that
plaintiffs refused to take this oath—that they have been conse-
quently excluded from all the benefits of the association, and
been expelled from membership for so refusing—and that the
funds of the association amount to three thousand dollars.    The
bill prays for a dissolution and an account as of a partnership.

The main question made and argued at the bar and on briefs,
is, whether this association is to be treated as a partnership or
as a voluntary charity.

It would be an endless task to review all the learning of the
books on the subject of charities.    It is not necessary that we
should do so.    Assuming that the Statutes of 39 and 43 of Eliza-
beth, on the subject of charitable uses, are in force in this State,
or if those statutes merely affirmed the common law before
existing, we think that this case is not affected by the solution
of the question, or by the doctrines of the Courts or the provi-
sions of the statutes upon the subject.

This is a voluntary association, formed for the benefit of the
members of it.    It partakes of the nature of a partnership.    We
do not see why a number of persons capable of contracting, may
not associate and agree, as the basis and consideration of the as-
sociation, that the funds raised by voluntary contribution, or
otherwise, through the by-laws of the company, shall be ap-
propriated, absolutely or in a given contingency, to the benefit
of the individual members.    This is such an agreement.    A num-
ber of the members of a particular avocation meet for mutual
benefit and protection, and prescribe rules for the government
of the society thus organized.    They agree that each shall con-
tribute a certain fixed sum to the common treasury, and that
this sum shall be applied, in a certain event, as in sickness, etc.
to the relief of the necessities or wants of the individual members
or of their families.    This is not a charity any more than an as-
surance society against fire, or upon life, is a charity.    It is sim-
ply a fair and reciprocal contract among the members to pay
certain amounts, in certain contingencies, to each other, out of a

common fund.   The view taken by the Supreme Court of Penn-
sylvania, in *Babb* v. *Reed et als.* (5 Rawle, 158,) meets our con-
currence.   Sergeant, J. delivered the opinion.   The case was
elaborately argued by able counsel.   In that case, the Odd Fel-
lows' Lodge was involved, which was a voluntary society, the
general objects of which seem not very dissimilar to those of this
association.   The Court say: "The association, from whose prop-
erty the money in Court proceeded, was formed and conducted
without incorporation.   Its objects are stated to be, the employ-
ment of its funds in purposes of mutual benevolence, among its
members and their families; but these cannot be deemed chari-
table uses under the common law of Pennsylvania or the statute
of 43 Elizabeth.   The twenty-one cases enumerated in the stat-
ute, and the others constructively within it, are of public nature,
tending to the benefit or relief, in some shape or other, of the
community at large, not restricted to the mutual aid of a few.
And if the objects of the association were within the class of
charitable uses, it does not follow, as has been contended, that it
is clothed with the character of a corporation, without a charter
obtained under the Act of 1791, or by virtue of a special Act of
Assembly.   Equity finds ways to sustain charitable trusts or
uses, without necessarily creating corporations for that purpose.
The objects and purposes of the society are of a beneficial kind,
and as such, might perhaps be embraced by the Act of 8th April,
1833, extending to beneficial societies and associations the pro-
visions of the Act of 1791.   In the absence of any actual charter
it is a voluntary association of individuals, and the members, in
their relations to third persons, are to be considered as partners,
in the same manner as individuals associated for the purpose of
banking; (*Hess* v. *Wertz*, 4 Serg. & Rawle, 356); or joint stock
companies, at one time so frequently in England, for commercial
and speculative purposes."

The doctrine of this case is amply sustained by authority.
The case of *Beaumont* v. *Meredith*, (3 Vesey & Beames, 180,) was
a bill filed by some members of a society called the Benevolent
Union Society, "for the relief of the members in case of their
sickness, and other benevolent purposes."   The bill stated that
the fund, formed by subscription of the members, for the benefit
of the society, in May, 1811, amounted to one thousand one hun-

dred and fifty pounds, three per cent. stock, standing in the names of Trustees; setting forth the articles, limiting the society to sixty-one members; among other regulations, declaring that the society should never be dissolved so long as seven members would support the same. The bill, alleging that the stock now belonging to the society, amounts to one thousand three hundred and thirty-three pounds and five shillings, three per cent. standing in the names of the six defendants, members of the society, and Trustees under the articles, who had, in breach of the articles, sold out part, and proceeded to dissolve the society; bill prayed an account and injunction, and that the defendants may be decreed to replace the stock. The Lord Chancellor said: "This society can be considered in this Court only as a partnership; and neither has, nor can have, a corporate character. The bill is, therefore, to be considered merely as insisting that the partnership, which is asserted to have existed, shall be considered as continuing to exist; and, therefore, that these sums are to be brought into Court; though throughout the pleadings this society is treated as having much more of a corporate character than can belong to them.

Of the only two cases I remember of this sort, coming to à hearing, the fate was this: Lord Thurlow, in one instance, and I in the other, discovered that the society existed upon principles, which, with reference to the amount of the number of subscribers and the nature of the subscriptions, made the whole a bubble; and the only relief, therefore, that could be administered, was by dissolving the society, and giving to each member a proportion of the sums subscribed for purposes, which, from the nature and object of the society, could not possibly be answered."

Pierce v. Piper, (17 Vesey, 15,) announces the same doctrine. (See, also, Ellison v. Reynolds, 2 Jac. & Walker, 511; Reese v. Parkins, Id. 300; so, Gow on Partnership, 227.) "A society for relief in sickness, by means of a fund raised by subscription of the members, has been considered as a partnership, it having no corporate character; and where it has been found that the society has existed upon principles which, with reference to the amount or the number of subscribers, and the nature of the subscriptions, made the whole a bubble, the same has been dissolved,

35

each member receiving a portion of the sum subscribed. The Court will likewise dissolve friendly societies, founded on erroneous principles; and until a dissolution takes place, will restrain the Trustees from making payments which will tend to exhaust the funds." (See, also, *Buckley* v. *Cuter*, 17 Vesey, 15; *Cockburn* v. *Thompson*, 6 Id. 322.) Collyer on Partnership, Sec. 53, states the rule in very clear language: "It may be here observed," says the author, "that there are some societies, not engaged in trade, but which, not partaking of a corporate character, are dealt with in a Court of Equity as partnerships; as private societies for the relief of members in cases of sickness, etc."

The numerous cases cited by the Respondent's counsel, have been examined; but they have nothing to do with this case; they are applicable only to cases of charities, where provision has been made for objects alien to the grantor—as colleges, schools, churches, etc.—and do not touch the case of voluntary associations providing for the members themselves.

2. The next question is, whether the exclusion of the plaintiffs, because they refused to take a prescribed oath, is a ground of dissolution.

We think it clear, that the association had no right, under the facts stated, to require the oath to be administered as a preliminary condition to the admission of the plaintiffs, to participate in the business of the association. (Stra. 536; Angel & Ames on Corp. 344.) In 3 Kent, (5th Ed. 60,) it is held, that the Court will require a strong case to be made out, before it will dissolve a partnership, and decree a sale of the whole concern. The mis conduct of the partner must amount to an exclusion of his copartner from his proper agency in the house, or be such as renders it impossible to carry on the business on the terms stipulated. So, Collyer on Partnership, (Sec. 297,) holds: "However, it may with safety be laid down, that not only willful acts of bad faith and fraud, but gross instances of carelessness and waste in the administration of the partnership, as well as exclusion of the other partners from their just share of the management, so as to prevent the business from being conducted on the stipulated terms, are sufficient grounds for the dissolution of the contract by a Court of Equity." The author continues: "And t has been laid down, that though the Court stands neuter with

respect to occasional breaches of agreements between partners, which are not so grievous as to make it impossible for the partnership to continue; yet, when it finds that the acts complained of, are of such a character that relief cannot be given to the parties except by a dissolution, the Court will decree a dissolution, though it is not specifically asked." So, in *Smith* v. *Joyes,* (4 Beavan, 503,) it was held, that where a partner does acts inconsistent with the duty of a partner, and of a nature to destroy the mutual confidence which ought to subsist between partners, and makes it impossible that the business can be conducted in partnership, with benefit to either party, the Court will decree a dissolution before the expiration of the term for which the contract was entered into. When it is insisted, that the conduct of one partner entitles the other to a dissolution, the Court must consider not merely the terms of the express contract between them, but also, the duties and obligations implied in every partnership, contract."

The question now arises on demurrer. *Prima facie,* this exclusion of the plaintiffs, as the averment is made, is sufficient ground for a dissolution; but the answer *may* put the case in a different aspect, and within the principle just announced. For it does not follow, if the majority of this association have mistaken their powers or duties, and acted under such mistake, if they are willing to correct the error, that a Court of Equity will necessarily grant the relief sought by the plaintiffs. But, we leave this question open until it is presented by the record.

The remaining question is as to the alleged defect of parties. But, this objection is conclusively settled by the authorities, which hold that the strict rule, that all persons materially interested must be parties, is dispensed with, where it is impracticable or very inconvenient, as in case of a very numerous association in a joint concern—in effect, a partnership. (*Cockburn* v. *Thompson,* 16 Ves. 321; Sto. Eq. Pl. Sec. 135.)

It follows, that the decree must be reversed, and the cause remanded for further proceedings, in pursuance of this opinion.