Argued January 6; affirmed January 17, 1933

STATE ex rel. CRUTZE v. TONEY et al.

(17 P. (2d) 1105)

W. C. Winslow, of Salem, for appellants.

Earl C. Bronaugh, of Portland (Lotus L. Langley, District Attorney, and George A. Pipes, Deputy District Attorney, both of Portland, on the brief), for respondent.

CAMPBELL, J. The Grand Lodge of Ancient, Free and Accepted Masons, is a body corporate, by virtue of an act of the Territory of Oregon, enacted January 12, 1858, with power among other things:

"* * * to retain and to make, ordain and establish such ordinances, resolutions as may be deemed necessary or expedient for the good government of said institution, its officers and members, and its prudential, financial and charitable concerns; * * *."

In June, 1933, the said Grand Lodge, at its regular Annual Communication, duly adopted and amended its constitution and by-laws. Among other provisions, it adopted section 164, of which subdivision 4, reads as follows:

"(4) Educational Fund—The Educational Fund, consists of the cash, bonds, securities and property shown by the report of the Grand Treasurer * * * June 1923, together with the interest thereon and the rent, interest, dividends and income which may be derived from any property in which said Educational Fund is now, or may be hereafter invested; also all property and funds which may at any time be given, devised and bequeathed to the Grand Lodge to be and become a part of the Educational Fund with the rent, interest and income thereof. The income of the Educational Fund * * * shall be each year applied to the payment of any expenses incurred in the management and control of said fund and to the payment of all appropriations made by the Grand Lodge or Trustees of the Grand Lodge for the education of any resident children of Master Masons of this Grand Jurisdiction. * * * No part of the Educational Fund shall be transferred to any other fund."

The history of this fund shows that it was initiated about the year 1854, in conformity with the ideals of the Masonic Fraternity of that era. Many of the early

donors have long since passed to the great beyond. The education of the youth is the bulwark of the liberties of the citizens. While it does not appear that any by-law had been adopted to preserve the fund intact, until the adoption of the by-law of June, 1923, its history discloses that no part of it had ever been used for other than educational purposes. From a small beginning, this fund has grown to almost a quarter of a million dollars and its income has been wholly used for the purpose designated. Always before, as well as since the adoption of the amended constitution and by-laws of June, 1923, it has been the common understanding among the fraternity and the contributors to the said fund that it should be permanent and the adoption of subdivision 4, of section 164, was merely a ratification and confirmation of the said unwritten general understanding.

Subdivision 5, of section 164, reads as follows:

"(5) Home Fund—The Home Fund shall consist of all moneys, bonds or other securities in said fund as shown by the Grand Treasurer's report of June A. D. 1923, together with ten dollars for each entered apprentice degree conferred in or for each Lodge hereafter: Five Dollars for each affiliation of a Master Mason from another jurisdiction; one dollar for each Master Mason reported in the annual returns of the Lodges, except as provided in Section 228 (4, 5); all interest derived from investment of the Home Fund, all receipts from sales and conveyances, gifts, devises and bequests that may be made for the benefit of the Home Fund, and all rents from and profits of all property accruing to the Grand Lodge on account of the Masonic and Eastern Star Home; and also all appropriations that may be made to it by the Grand Lodge. No part of the Home Fund shall be transferred to any other fund.

The Home Fund shall be subdivided as follows: .
(a) Maintenance.
(b) Endowment.
(c) Building.''

Subdivision 7, of said section 164, reads as follows:

''(7) This Endowment Fund shall consist of all gifts, devises, that may be made to the Grand Lodge for the benefit of the Masonic and Eastern Star Home, and also all sums appropriated to it by the Grand Lodge, including such other sums as may be received by the Grand Lodge and designated for the fund.

The principal of this fund shall never be transferred to any other fund, nor expended. * * *.''

At the said Grand Lodge Communication of June, 1923, they adopted section 141, of said by-laws, which reads as follows:

''Sec. 141. Duties of Committee on Endowment—Solicitation of Endowments—To arrange, among the Fraternity, for endowments with which to perpetuate the charitable, educational and fraternal activities of the Grand Lodge.''

At all times since the adoption of said amended constitution and by-laws, there has existed a committee to discharge the duties imposed upon it by said section 141. This committee has been engaged in the solicitation of funds both for the Educational Fund and the Home Endowment Fund and many people, including the Relator herein, contributed to said funds by virtue of the representations of said committee and the above provision of the by-laws with a belief that said funds would be permanent and irreducible and no part thereof would ever be transferred to any other fund or used for any other purpose than those designated in the said by-laws. The said Grand Lodge, at its Annual Communication, in June, 1930, by and through its

regular representatives in regular session assembled, adopted a resolution directing the Trustees of said Grand Lodge to make up a deficit of $4,039.08, occasioned by the operation of the Masonic Home for the year ending April 30, 1930, by diverting one-half of said amount of deficit from the Educational Fund and one-half from the Home Endowment Fund, to the Home Maintenance Fund. The defendants as such Trustees of said Grand Lodge, acting under the purported authority attempted to be conferred upon them by said resolution, will, unless restrained, divert from said funds as aforesaid the amount provided by said resolution. It is admitted that there is no dearth of objects of the charity of both funds.

On March 14, 1932, the State on relation of Albert L. Grutze, a contributor to both funds, brought this suit to restrain the Trustees from carrying out the resolution, and alleged the aforementioned facts in its complaint. To this complaint, defendants filed a demurrer on the grounds that the complaint did not state facts sufficient to constitute a cause of suit, and that the court had no jurisdiction over the subject matter. The demurrer was overruled, and the defendants declining to plead further, the court entered a decree restraining the transfer of said funds. Defendants appeal.

The only assignment of error is that the court erred in overruling defendant's demurrer and entering a decree of injunction.

■ There can be no doubt that both the Educational Fund and the Home Endowment Fund are quasi-public charities. The number of beneficiaries is uncertain. They consist of a class of persons described in general language, fluctuating and changing in their individual

members: *Pennoyer v. Wadhams,* 20 Or. 274 (25 P. 720, 11 L. R. A. 210); *In re John's Will,* 30 Or. 494 (47 P. 341, 50 P. 226, 36 L. R. A. 242); *Wemme v. First Church etc.,* 110 Or. 179 (219 P. 618); 2 Perry on Trusts (6th Ed.), § 687. See note to *Hoeffer v. Clogan,* 63 Am. St. Rep. 248.

■ The contention is made by appellant that, the Grand Lodge, having created the fund, has the power to unmake it. The Grand Lodge, however, is not the creator of the fund. All that the Grand Lodge did was to contribute some amount, the record does not disclose how much, and make it possible for others to assist to a large extent in the creation of the fund by their contributions, under the solemn promise of the Grand Lodge that it would take and hold the fund in trust, and administer it, and never permit it to be used for any other purpose than the one designated, or allow any part of it to be transferred to any other fund.

■ The protection of quasi-public charities and trusts is peculiarly within the inherent powers of a court of equity. These powers are always available to compel the trustees of such trusts, to discharge their duties according to the conditions under which they hold: *Pennoyer v. Wadhams,* supra; *In re John's Will,* supra; *Wemme v. First Church etc.,* supra; *Vidal v. Girard's Ex.* 2 Howard 126 (11 L. Ed. 205).

■ The authorities appear uniform in holding that the charitable uses designated by the donor of a fund can not be changed to any other purpose so long as there are objects of such charity or so long as it can be applied to the purposes named: 2 Perry on Trusts (7th Ed.) § 724, et seq.

"The trustees, whether individuals or corporations, can not convert the fund to other uses so long as the

uses declared by the donor are capable of execution. Nor can any agreement or concurrence among the beneficiaries prevail to divert a fund given for a particular and possible purpose." 2 Perry on Trusts (7th Ed.), § 733.

The circuit court committed no error, therefore its decree will be affirmed.

It is so ordered.

KELLY, J., not sitting.