17 Cal.2d 853 (1941)
Estate of ELLA M. HENDERSON, Deceased. BESSIE PECK, Executrix, etc., Respondent,
v.
EASTERN STAR HOMES OF CALIFORNIA (a Corporation), Appellant; LEON McGARY et al., Heirs and Respondents.
L. A. No. 17365. 
Supreme Court of California. In Bank. 
April 28, 1941.
 Argabrite & Elver for Appellant.
 Lawrence Edwards and Charles H. Epperson for Respondent Heirs.
 No appearance for Respondent Executrix. *855
 TRAYNOR, J.
 On September 23, 1937, Ella M. Henderson died leaving a will executed on June 11, 1937, which provided for a specific legacy of $500 to Bessie M. Peck and bequeathed the residue of the estate to the Eastern Star Homes of California "to be used by the trustees in such manner as may be most beneficial to the Home and its inmates". The will was admitted to probate and Bessie Peck was appointed executrix of the estate which consists of personal property appraised at $16,229.04. At the request of Leon McGary, a nephew and one of the heirs-at-law of deceased, the executrix instituted this proceeding to determine which persons were entitled to share in the distribution of the estate. The trial court held that the Eastern Star Homes was a non-profit charitable organization under sections 41 and 43 of the Probate Code. These sections provide that a devise or bequest to a charitable corporation or to a person in trust for charitable uses under a will executed less than six months prior to the death of the testator cannot exceed one-third of the entire estate if there are surviving heirs who would otherwise take the excess over one-third. The court concluded that Bessie Peck should receive the sum of $500; the Eastern Star Homes should receive only one-third of the residue of the estate; and the nephews, nieces, and other relatives of the deceased should receive the other two-thirds of the residue. Judgment was entered accordingly. The Eastern Star Homes has appealed.
 The respondent executrix has taken the position that she is a neutral party and not called upon to contest the appeal of the Eastern Star Homes. She consequently has filed no brief nor made any appearance in opposition to the appeal. Certain of the heirs of the deceased, however, to whom distribution of a portion of the residue of the estate has been ordered, have been granted leave to appear and have filed a brief in opposition to that of appellant.
 The Order of the Eastern Star in the State of California is an unincorporated fraternal organization consisting of approximately 96,000 members affiliated in 492 subordinate chapters located within the state. Membership in the Order is limited to those persons elected by the Order from among Master Masons, their wives, and certain other female relatives. In addition to an initiation fee, each member pays *856 annual dues and assessments levied by the Grand Chapter, the governing body of the Order in this state, and by the local chapter with which the member is affiliated. In 1930 the Grand Chapter organized the Eastern Star Homes of California, a non- profit corporation and appellant herein, for the following purpose: "To own, control, conduct and manage homes for the care, maintenance and support of aged, indigent or infirm members of the Order of the Eastern Star". Appellant maintains such a home in Los Angeles. The laws of the Grand Chapter and the by-laws of the corporation provide that admission to the Home shall be restricted to members of the Order selected by appellant's board of trustees who: (1) have been nominated by their local chapter; (2) have been members in good standing of the Order of the Eastern Star in the State of California for not less than 10 years; (3) are 65 years of age; and (4) are in reasonably good health. Upon admission to the Home each member is required to assign all of his assets to the appellant.
 The average yearly cost of operating the Home is $30,000, 80 per cent of which is derived from annual assessments levied by the Grand Chapter upon members of the Order and the remaining 20 per cent principally from income on investments. Appellant's only other income is $500 a year from its endowment fund.
 If the bequest in question constitutes a gift to a charitable institution or a gift in trust for charitable uses, it is invalid to the extent that it exceeds the one-third limitation imposed by section 41 of the Probate Code, the will having been executed within six months prior to the death of the testatrix. The present bequest sets up a trust for the benefit of the inmates of the Home. It is made to the Eastern Star Homes, Inc., "to be used by the trustees in such manner as may be most beneficial to the Home and its inmates". Thus, the trustees, the beneficiaries, and the trust purpose are all stated. Such bequests, even though made directly to an association, are generally construed to constitute trusts for the benefit of the inmates if the bequests are charitable in nature. (Estate of McDole, 215 Cal. 328 [10 PaCal.2d 75]; Estate of De Mars, 20 Cal.App.2d 514 [67 PaCal.2d 374]; Estate of McCray, 204 Cal. 399 [268 P. 647]; Estate of Upham, 127 Cal. 90 [59 P. 315]; Rest., Trusts, sec. 397 (f).) *857
 [1] A bequest is charitable if: (1) It is made for a charitable purpose; its aims and accomplishments are of religious, educational, political or general social interest to mankind. (People v. Cogswell, 113 Cal. 129 [45 P. 270, 35 L.R.A. 269]; Estate of Merchant, 143 Cal. 537 [77 P. 475].) (2) The ultimate recipients constitute either the community as a whole or an unascertainable and indefinite portion thereof. (People v. Cogswell, supra; Estate of Hinckley, 58 Cal. 457; Fay v. Howe, 136 Cal. 599 [69 P. 423].) The charitable nature of an institution is determined on the same basis.
 [2-4] The bequest in the present case was clearly made for a charitable purpose. Since the enactment of the Statute of Charitable Uses during the reign of Elizabeth, aid to the aged and infirm has been recognized as charitable. (See cases cited in 5 Cal.Jur. 24.) Relief of poverty is not a condition of charitable assistance. If the benefit conferred has a sufficiently widespread social value, a charitable purpose exists. (Rest., Trusts, secs. 368, 374; People v. Cogswell, supra; Collier v. Lindley, 203 Cal. 641 [266 P. 526]; 16 Cal. Law Rev. 478.) Thus, gifts or trusts for educational institutions (Rest., Trusts, sec. 370; People v. Cogswell, supra), the promotion of woman's suffrage (Garrison v. Little, 75 Ill. App. 402), the publishing of religious writings (Rest., Trusts, sec. 371; Estate of Graham, 63 Cal.App. 41 [218 P. 84]; see 16 Cal. Law Rev. 478 at 482), and even for the relief of dumb animals (Estate of Coleman, 167 Cal. 212 [138 P. 992, Ann. Cas. 1915C, 682]; Rest., Trusts, sec. 374 (c)), have been held charitable. It is a matter of common knowledge that aged people require care and attention apart from financial assistance, and the supply of this care and attention is as much a charitable and benevolent purpose as the relief of their financial wants. Every civilized community must provide facilities, either public or private, for the care of old people regardless of financial condition, and a bequest to such an institution to further its purposes is of enough social value to be designated as charitable. (See Estate of Friedman, 171 Cal. 431 [153 P. 918]; Estate of Peabody, 154 Cal. 173 [97 P. 184]; Rest., Trusts, secs. 368-374.) The articles of incorporation of appellant Home indicate that it was created for the purpose of rendering assistance to the deserving aged. A bequest to it may therefore be *858 charitable even though indigence is not a requirement for admission.
 [5] Appellant points out that upon admission an inmate must assign his assets to the Home. The value of such an assignment is not necessarily commensurate with the benefits derived by him from the Home. But even if each inmate were required to pay in full for his care, a bequest to the institution may still be charitable. A gift or trust to support an institution beneficial to the community is charitable even though the inmates must pay fees or contribute to the expense of maintaining the institution so long as the income thus derived is used only to maintain the institution or for some other charitable purpose. (Rest., Trusts, sec. 376 (c); Dingwell v. Seymour, 91 Cal.App. 483 [267 P. 327]; Estate of Peabody, 154 Cal. 173 [197 P. 184].) Thus students at a private school may be required to pay tuition fees to cover the cost of their instruction; yet a gift to such a school for the purpose of assisting in the education of its students is clearly charitable. (Estate of Bailey, 19 Cal.App.2d 135 [65 PaCal.2d 102]; People v. Cogswell, supra; Estate of Bartlett, 122 Cal.App. 375 [10 PaCal.2d 126]; Rest., Trusts, sec. 370.) Appellant cites a number of decisions denying a charitable status to fraternal orders, lodges, and kindred organizations. (Bangor v. Rising Virtue etc. Masonic Lodge, 73 Me. 428 [40 Am. Rep. 369]; Mason v. Perry, 22 R. I. 475 [48 Atl. 671]; Babb v. Reed, 5 Rawle (Pa.), 151 [28 Am. Dec. 650].) These cases have no bearing on the present one. The gift here is not to the Order of the Eastern Star but to the Eastern Star Homes, Inc., a corporation devoted exclusively to caring for the aged, and it is not a general fraternal contribution but was made expressly for the charitable purpose of aiding the aged.
 [6] The support of the Home by annual assessments on members of the Order of the Eastern Star likewise does not destroy the charitable nature of the bequest. Appellant cites Estate of Dol, 182 Cal. 159 [187 P. 428], Brown v. La Societe Francaise, etc., 138 Cal. 475 [71 P. 516], and Gorman v. Russell, 14 Cal. 531, for the proposition that a mutual benefit society, each member of which pays fixed periodic sums into a common fund which is used to render medical or other assistance to any member in need thereof, does not constitute a charitable organization. Appellant contends that *859 it is just such a non-charitable mutual benefit society organized for the protection of the members of the Order of the Eastern Star and that a bequest to it is therefore not charitable. Appellant, however, overlooks the fact that the nature of the bequest is not necessarily determined by the status of the organization to which it is made. A charitable gift may be made to a non-charitable institution so long as the purpose of the gift remains charitable. (Estate of Willey, 128 Cal. 1 [60 P. 471]; Powers v. Home for Aged Women, 58 R. I. 323 [192 Atl. 770, 110 A.L.R. 1361].) The cases of Gorman v. Russell and Brown v. La Societe Francaise, etc., were concerned solely with the charitable or non-charitable status of certain organizations and not with the question of whether a gift to such organizations by an outsider might be a charitable one. In the Gorman case a group of longshoremen formed a society, each member of which contributed to a common fund which was used to assist members who became sick or disabled. Certain individuals who were expelled from the organization brought suit for dissolution and distribution of the funds, claiming the organization was no more than a private partnership. The defendants contended the society was a charitable one and that therefore the funds belonged not to the individual members but to the ultimate beneficiaries. The court held the organization to be non- charitable. In the Brown case a patient who was negligently treated in a hospital maintained by a mutual benefit society for the assistance of its members brought suit against the hospital. The hospital contended that it was a charitable institution and therefore not liable under the rule of respondeat superior for the negligent acts of its servants. The court held it to be non-charitable. In Estate of Dol the question was squarely presented whether a bequest to a mutual benefit society organized to render medical aid to its members was charitable. The court, however, held on the basis of the Brown and Gorman cases that the bequest was not charitable because the organization itself was not a charitable one. It failed to consider in any way whether the gift was charitable in nature despite the status of the organization, overlooking the fact that the Brown and Gorman cases on which it relied were not at all concerned with the charitable nature of gifts.
 If a group of individuals agree to contribute equal amounts into a fund to be used for the benefit of all, such a group may *860 well be said to be non-charitable in nature because each individual is providing only for his own welfare and does not intend to make a free contribution toward the assistance of others. If an outsider, however, receiving no benefits from the organization, makes a gift to it, that gift may well be a charitable one if the members of the organization are sufficiently numerous and it is organized for a purpose beneficial to society such as providing for medical assistance to its members. Such a donor has the charitable purpose of assisting those members of a large group who become sick, without any benefit to himself, and the gift thus may be a charitable one.
 In the present case, therefore, even if the Home itself be considered in the nature of a mutual benefit society and hence non-charitable, the bequest to the Home, being for the purpose of aiding the aged, may remain charitable.
 [7] A true mutual benefit association, however, is based upon reciprocal contracts and requires that a member receive benefits as a matter of right. Members of the Order of the Eastern Star who pay their required assessments acquire no right, contractual or otherwise, to be admitted to the Home, even after fulfilling the entrance requirements. A member must be nominated by his local chapter and selected by the trustees of the Home before he can gain admittance, and only one member out of every 500 in a local chapter can acquire residence in the Home at the same time. A member is admitted to the Home because his case is deserving and not because his previous contributions have given him a contractual right to admission. Thus, there is a clear distinction between this type of organization which has a charitable purpose and a mutual benefit society. Many decisions sustain the charitable nature of institutions established to render aid to the members thereof who need assistance even though the institutions are supported by contributions from the members. (Spiller v. Maude, 32 Ch. D. 158 (1881); Pease v. Pattison, 32 Ch. D. 154 (1886); In re Buck, 2 Ch. 727 (1896); In re Lacy, 2 Ch. 149 (1899); Morrow v. Smith (Re Wilson), 145 Iowa 514 [124 N.W. 316, Ann. Cas. 1912A, 1183, 26 L.R.A. (N. S.) 696]; Plattsmouth Lodge, etc., v. Cass County, 79 Neb. 463 [113 N.W. 167]; De la Pole v. Broughton, 118 Wash. 395 [204 P. 15]; Bogert, Trusts and Trustees, vol. 2, pp. 1122-1126; Rest., Trusts, sec. 369.) The bequest to appellant *861 was therefore made for a charitable purpose and to an institution with a charitable purpose.
 [8] There remains the question whether the aged members of the Order for whose welfare the Home was established constitute a class of beneficiaries indefinite enough to render the bequest or the institution to which it was made charitable. It is not essential that every member of the community be a direct beneficiary of a charitable gift. A charity may be validly restricted to an indefinite class within the community so long as the class is large enough to make the enforcement of the gift beneficial to the community. (Rest., Trusts, sec. 375.) In the case of bequests for the relief of poverty, or the advancement of education, or religion, or the promotion of health, inclusive of the care of the aged, the number of beneficiaries need not be so large as when the gift is simply for the general benefit of a class without indication of the particular purpose for which it is to be used. (Rest., Trusts, sec. 375 (a).) Thus gifts and trusts to eleemosynary institutions whose benefits are restricted to members in a particular organization have been held charitable. (Estate of Halm, 196 Cal. 778 [239 P. 307]; Estate of Bailey, 19 Cal.App.2d 135 [65 PaCal.2d 102]; Spiller v. Maude, 32 Ch. D. 158 (1881); Pease v. Pattinson, 32 Ch. D. 154 (1886); In re Buck, 2 Ch. 727 (1896); In re Lacy, 2 Ch. 149 (1899); City of Indianapolis v. Grand Master, 25 Ind. 518; Duke v. Fuller, 9 N. H. 536 [32 Am. Dec. 392]; Morrow v. Smith (Re Wilson), supra; Most Worshipful Grand Lodge v. Board of Review, 281 Ill. 480 [117 N.E. 1016]; Roberts v. Corson, 79 N. H. 215 [107 Atl. 625]; State v. Toney, 141 Or. 406 [17 PaCal.2d 1105]; Masonic Education and Charity Trust v. City of Boston, 201 Mass. 320 [87 N.E. 602]; City of Petersburg v. Petersburg Benevolent Mechanics' Assn., 78 Va. 431; De la Pole v. Broughton, supra; Scott on Trusts, vol. 2, pp. 2022-2028; Bogert, Trusts and Trustees, vol. 2, pp. 1106, 1107; Rest., Trusts, 369.) Gifts and trusts designed to aid the poor, the aged, and the unfortunate have been sustained as charitable although the beneficiaries are limited to the widows and orphans of the deceased members of particular organizations, including fraternal orders. (Estate of Willey, 128 Cal. 1 [60 P. 471]; Estate of Upham, 127 Cal. 90 [59 P. 315]; Guilfoil v. Arthur, 158 Ill. 600 [41 N.E. 1009]; Widows and Orphans *862 Home, etc., v. Commonwealth, 126 Ky. 386 [103 S.W. 354, 16 L.R.A. (N. S.) 829]; Duke v. Fuller, 9 N. H. 536 [32 Am. Dec. 392]; Heiskell v. Chickasaw Lodge, 87 Tenn. 668 [11 S.W. 825, 4 L.R.A. 699]; City of Petersburg v. Petersburg Benevolent Mechanics' Assn., 78 Va. 431; De la Pole v. Broughton, 118 Wash. 395 [204 P. 15].)
 Appellant points out that admission to the Home is restricted to members of the Eastern Star who have been affiliated with the California Order for 10 years and have reached the age of 65 years and contends therefore that the number of beneficiaries is definitely fixed since their identity can be ascertained by an examination of the Order rolls. This argument assumes that the Home exists solely for the benefit of members who are at present able to fulfill the requirements for admission. The Order of the Eastern Star, however, is a constantly changing group. The Home exists not only for the benefit of members now eligible for admission but also for the benefit of members who at present lack the entrance qualifications and persons who will join the Order in the future. An inspection of the records therefore will not disclose all of the class to be benefited. In addition, appellant's articles of incorporation limit each local chapter to one resident in the Home for each 500 members in the Chapter. This restriction operates to exclude from the Home many members possessing the required qualifications for admission and renders the beneficiaries even more indefinite.
 [9] Section 41 of the Probate Code restricts the amount of a charitable bequest to one-third of the testator's estate. The trial court in the present case restricted the amount of the bequest to appellant to one-third of the residue of the testator's estate. The judgment is reversed and the cause is remanded to the trial court with instructions to modify its decree by awarding to appellant an amount equal to one-third of the testator's estate, neither party to recover costs on appeal.
 Shenk, J., Edmonds, J., and Gibson, C.J., concurred.
 CURTIS, J.,
 Dissenting.
 I dissent.
 From the findings of the court it appears that the Eastern Star Homes was organized as a non-profit corporation under the provisions of section 593 of the Civil Code by the Grand *863 Chapter of the State of California of the Order of Eastern Star. Its articles of incorporation state that the purpose of its organization is "to own, control, conduct and manage homes, hospitals and asylums for the care, maintenance and support of aged, indigent or infirm members of the Order of the Eastern Star". The by- laws of the corporation restrict admission to the Home to members of the Order of the Eastern Star who have been in good standing for not less than ten years. The Home is maintained and supported by dues and assessments levied against members of said Order. No person not a member of said Order has ever been admitted as a resident of said Home. It thus appears that only those persons who have contributed toward the support of said Home for a long period of time are entitled to the privileges of said Home, and such contributions are practically the sole support of the Home. Is such an organization a charitable or benevolent society or corporation within the meaning and intent of section 41 of the Probate Code?
 In the case of Brown v. La Societe Francaise, etc., 138 Cal. 475 [71 P. 516], the question before the court was whether or not the defendant was a charitable institution. In passing upon that question, the court held that it was not such an organization and, for reason of so holding, stated at page 477:
 "From the by-laws of the defendant, of date May 10, 1854, it appears that the society was originally organized as a voluntary association, but was afterwards incorporated by the filing of a certificate of election of trustees, June 7, 1854 (Hittell's Gen. Laws, art. 1024); and on May 5, 1895, new by-laws were adopted. From these it appears that 'the society is established on the basis of mutuality for the treatment of sick members,' or, as more specifically provided, for the purpose of securing to its members (without payment otherwise than of dues) medical and surgical treatment, including the services of its physicians, surgeons, apothecaries, dentists, nurses, etc., and also medicines. Nor do we find in it any provision for assistance to others, except to paying patients, or sick persons not members admitted to treatment for agreed compensation. It is therefore merely an association for mutual profit or benefit, similar in its essential nature to other societies formed for such purposes. (Gorman v. Russell, 14 Cal. 531; 18 Cal. 688; Donnelly v. Boston Catholic Cemetery, 146 Mass. 166; Coe v. Washington Mills, 149 Mass. *864 547; Babb v. Reed, 5 Rawle, 151 [28 Am. Dec. 650]; Texas and Pac. Coal Co. v. Connaughton [Connaughten], 20 Tex. Civ. App. 642 [50 S.W. 173].)"
 In the Estate of Dol, 182 Cal. 159 [187 P. 428], an appeal was taken from an order distributing the sum of $5,000 to a hospital located in Los Angeles, and the name of which and the purpose of its organization were practically the same as those of the defendant in the Brown case. The court held that the two organizations were so similar that the later case was controlled by the decision in the earlier case, that the respondent in the case then before the court was not a charitable or benevolent society or corporation as these terms were used in section 1313 of the Civil Code (now in part re-enacted in section 41 of the Probate Code), and that the bequest to it was not limited by the provisions of said section of the code. In the discussion of the question of the charitable character of the defendant therein, Mr. Justice Shaw at page 163 of the Estate of Dol expressed the view of the court as follows:
 "... The same principle is stated in Gorman v. Russell, 14 Cal. 531. Referring to an organization known as the 'Riggers and Stevedores Union Association of San Francisco,' which was unincorporated, the court said that it was a 'voluntary association formed for the benefit of the members of it,' and further, that 'a number of the members of a particular avocation meet for mutual benefit and protection and prescribe rules for the government of the society thus organized. They agree that each shall contribute a certain fixed sum to the common treasury, and that the sum shall be applied, in a certain event, as in sickness, etc., to the relief of the necessities or wants of the individual members or of their families. This is not a charity any more than an assurance society against fire, or upon life, is a charity. It is simply a fair and reciprocal contract among the members to pay certain amounts in certain contingencies, to each other, out of a common fund.' The fact that the society there involved was unincorporated makes no essential difference. The members of the corporation here involved are interested therein substantially in the same way as the members of a voluntary association or partnership formed for the same object are interested. No sound distinction exists on this ground. In each case the arrangement partakes of the nature of a contract whereby, for the dues and fees agreed upon and paid, the members receive *865 the medical treatment to be given by the association at the expense of the common fund thus accumulated. Such a society, whether incorporated or not, is not doing charitable work, but is merely rendering the consideration agreed upon in the contract between it and its members."
 The Estate of Dol was again before this court. On the second occasion the question before the court was whether the Los Angeles County Pioneer Society was a charitable society, as that term was used in section 1313 of the Civil Code. That society was organized for the purpose of the collection and preservation of data touching the early history of the state. This court held: "We are of the opinion that the respondent is a charitable and benevolent corporation. If its only object were to cultivate social intercourse and friendship among its members, it would be for the benefit of the members alone and it would not come within that class. But it is apparent from the reading of the part of the articles (of incorporation) above quoted that this was but a minor part of its purposes." (186 Cal. 64, 65 [198 P. 1039].)
 It might be well to call attention again to the purpose for which the appellant, the Eastern Star Homes, was organized, which is to maintain a home exclusively for its own members. No person other than a member of the Order in good standing could enjoy the privileges of the Home, which was maintained and supported by dues and assessments paid by these members.
 No legal distinction may be made respecting their charitable character between an institution founded and maintained by a society or corporation for the purpose of providing a home for its needy members and a hospital founded and maintained for the purpose of caring for its sick or injured members, where each institution is supported and maintained by dues and assessments levied upon and paid by its members. In each case those enjoying the privileges of the home or hospital have paid for all the privileges and benefits received by them. In neither case does any member of either of such institutions, enjoying the privileges and benefits of the society of which he is a member, receive anything for which he has not paid a stipulated consideration. In the case of a member of the Order of the Eastern Star, before she can be entitled to the benefit of the Home maintained by that Order, she must have been a member of the Order for *866 ten years and be in good standing at the time of making her application for admission. That means that for that period of time she has contributed toward the support of the Home all dues and assessments levied by the Order. To say that the Home is a charitable society or corporation when its benefits and privileges are limited solely to the members of the Order who have contributed definite and fixed amounts for its maintenance and support, is contrary to all reasonable or legal definitions of the word "charity". The decisions above cited are contrary to any such construction and clearly support the contention of appellant that the Eastern Star Homes is not a charitable or benevolent society or corporation within the provisions of section 41 of the Probate Code. "Such a society," quoting from the case of Gorman v. Russell, supra, and approved and applied by this court in the Estate of Dol, supra, "whether incorporated or not, is not doing charitable work, but is merely rendering the consideration agreed upon in the contract between it and its members."
 The respondents have cited in their brief some thirty cases decided either by this court or by the District Courts of Appeal, which they argue support their contention that the appellant is a charitable or benevolent society or corporation. A mere reading of these cases discloses that not one of them involves a society or corporation whose benefits and privileges are limited only to the paying members of such organization. It is useless to discuss these cases in any detail for the reason that they are so wide of the mark that their inapplicability is apparent from simply mentioning the name and purpose of the particular organization to which the gift was made. In one case, Estate of Friedman, 171 Cal. 431 [153 P. 918], the bequest was made to the Hebrew Home for Aged Disabled of San Francisco. It is not clear that this Home was ever limited even to the Jewish people, but it does plainly appear that the privileges of this Home were not limited to the members of that group who contributed to the maintenance of the Home, like those members of the hospital in the Dol case were doing. A number of these cases involved gifts to educational institutions, which clearly have no application to the question before us in the present proceeding. In other cases the question before the court concerned bequests to churches and other religious organizations. *867 As churches and religious organizations are invariably held to be charitable societies, the court in these last named cases held, in accordance with this well-established rule, that such bequests were charitable within the terms of section 1313 of the Civil Code. The Estate of Burns, 26 Cal.App.2d 741 [80 PaCal.2d 77], is also cited, but for what purpose we are unable to determine. While the will under contest in that case provided for a bequest to the Hollenbeck Home, a charitable institution, the sole question before the court in that case was whether the evidence of the contestants established a prima facie case of undue influence on the part of certain beneficiaries named in the will. This court held that it was insufficient and affirmed the judgment of nonsuit. It is unnecessary to consider any of the other cited cases, as those not discussed above have no more bearing upon this present proceeding than those we have considered.
 The rule approved by the decisions of this state cited and relied upon above is the general accepted doctrine in other jurisdictions. In Zollmann on Charities at section 206, it is stated: "Mutual benefit societies exist in great numbers and, as their name indicates, are of much benefit to their members. ... Since their benevolence begins and ends at home, they will not receive recognition as charities ..." The author in section 208 of the same work in discussing the status of lodges, stated: "On reason lodges are not charities within the meaning of the statute of Elizabeth. ... They are bodies which derive their funds not from gifts, testamentary or otherwise, but from dues, fees and assessments, and which have other objects than charity, and are rather mutual benefit associations than charitable institutions. ... A lodge of Odd Fellows is, therefore, a mutual benefit society rather than a charity."
 A leading case upon this subject is Bangor v. Rising Virtue etc. Masonic Lodge, 73 Me. 428 [40 Am. Rep. 369], in which the question before the court was whether a Masonic lodge was a charitable institution. After an extended review of the authorities upon the subject and an analysis of the constitution, by-laws, and rules and regulations of Masonic lodges, the court held that such a lodge was not a charitable institution. On page 436 of the opinion the court states its conclusion as follows: "... Its funds are derived ... from fees and the assessments of its members. The funds so obtained are to be distributed among the poor and needy members, *868 from whom they were collected, and among their wives and children. It is an association for the mutual benefit of its members, and not a charitable institution within the meaning of the statute." The statute just referred to provided that all real and personal property of all benevolent and charitable institutions incorporated in that state should be exempt from taxation. The court held that as the lodge was not a charitable or benevolent institution, it was not exempt from taxation under said statute.
 Among the cases cited and relied upon in Bangor v. Masonic Lodge, supra, was the case of Babb v. Reed, 5 Rawle (Pa.), 151, 157 [28 Am. Dec. 650], wherein the charitable character of an Odd Fellows lodge was at issue. In commenting on that case the Supreme Court of Maine in the above decision (p. 436) observed: "In Babb v. Reed, 5 Rawle [151] 157 [28 Am. Dec. 650], it was held that a lodge of Odd Fellows, being an association of mutual benevolence among its members, was not a charitable institution. ... 'The association,' observes Sargent, J., in delivering the opinion of the court, 'from whose property is the money in court, was formed and conducted without incorporation. Its objects are stated to be the employment of its funds in purposes of mutual benevolence among its members and their families; but these cannot be deemed charitable uses under the common law of Pennsylvania, or the statute 43 Eliz. ...' "
 Respondents contend that a later case of the Supreme Court of Pennsylvania, Philadelphia v. Masonic Home, 160 Pa. 572 [28 Atl. 954, 40 Am.St.Rep. 736, 23 L.R.A. 545], lays down a different rule and is in conflict with the earlier case of Babb v. Reed, supra, but such is not the case. The Constitution of the State of Pennsylvania provided that property of an "institution of purely public charity" was exempt from taxation. The court in Philadelphia v. Masonic Home, supra, simply held that the Masonic home, maintained by the Grand Lodge of Masons of the State of Pennsylvania, was not such an institution, as the benefits of the Home were limited to members of the Masonic fraternity and were not open to the public.
 In the case of In re Rathbone's Estate, 170 Misc. 1030 [11 N.Y. SupP.2d 506, at p. 529], is to be found a clear statement as to the distinction between a beneficial and a charitable society. It is there said: "The distinction between *869 a beneficial and a charitable society is clear. In the beneficial society the world outside the association's doors is essentially a stranger. The beneficial society is regardful only of its members. It constitutes a group of insiders. Its membership is formed of candidates able to satisfy onerous conditions--financial, moral, civil, etc. The members have been drawn together by a mutual desire to be as they are. Once assembled they exclude all other persons from their society activities. The charitable institution is exactly the opposite in all the stated particulars allowing of comparison. To a charity the world outside is a world, the inhabitants of which should all be united as brothers. ... The managing members of a charitable organization expect to get nothing for their labors. Charity seeks primarily the good of others. ... Charity is the proof of the profound paradox that to get one must give but the giving must not be for the purpose of getting. Every charitable use is open to the whole world so far as is practicable."
 As the appellant, the Eastern Star Homes, was founded and is maintained for the express and sole purpose of providing a home for the members of the Order of the Eastern Star of this state, and as the funds necessary for its operation and maintenance were contributed by the members of said Order in regular dues and assessments, under the above authorities it cannot be held to be a charitable or benevolent corporation or society, but is, on the other hand, a mutual benefit association, rendering to its members benefits for an agreed consideration under a contract between itself and its members.
 The respondents further contend that even though the appellant is not a charitable or benevolent society or corporation, that the bequest to it is for a charitable purpose and therefore comes within the limitation placed on gifts of that character by the provisions of section 41 of the Probate Code. In support of this contention they cite the case of Estate of Willey, 128 Cal. 1 [60 P. 471]. In that case it was contended that certain gifts to several Masonic bodies were invalid because these bodies were charitable societies. The court held that even if these Masonic bodies were not charitable societies, the gifts to them were for charitable purposes and sustained them. This decision, therefore, properly may be construed as holding that a gift or bequest may be charitable and therefore subject to the limitation placed on such *870 gifts by section 41 of the Probate Code, although the person or society to whom the gift or bequest is made may not be a charitable society.
 As already stated, the bequest to the Eastern Star Homes was made "to be used by the trustees in such manner as may be most beneficial for the Home and its inmates". It is presumed that the trustees will properly apply the fund so bequeathed to them in accordance with the terms imposed by the testatrix. (Estate of Willey, supra, p. 12.) If so, the proceeds from the gift will be applied in accordance with the purposes of the society, as set forth in its articles of incorporation, which we have seen are "to maintain the Home for the members of the Order". As the purposes of the Order of the Eastern Star are not charitable and the bequest from the testatrix was to carry out these purposes, it cannot be said that the bequest took on any of the characteristics of a charitable nature. Had the bequest been made to the Home for the care and maintenance of the children of the members of the Order, rather than for the benefit of the members, then there might be some legal grounds for holding it to be a gift in trust for charitable purposes, and the case would be brought within the rule announced in the Estate of Willey, supra, where the bequest was made to certain Masonic bodies "for the use of the widows' and orphans' fund of said" lodges. But it was not so made and, as made, the only persons to be benefited by the gift were the members of the Order who might at some time in their lives become residents in the Home.
 The accepted definition in this state of a charitable trust is "... a donation in trust for promoting the welfare of mankind at large, or of a community, or of some class forming a part of it, indefinite as to numbers and individuals." (People v. Cogswell, 113 Cal. 129 [45 P. 270, 35 L.R.A. 269]; Zollmann on Trusts, p. 140; 5 Cal.Jur. 6.)
 The bequest here involved does not come within the terms of this definition. It was not a donation for promoting the welfare of mankind at large, or of any community or class indefinite in number. On the other hand, its purpose was to promote the welfare of a class of individuals definite in number; that is, the membership of the Order of the Eastern Star of the state. As no member of the Order is entitled to become a resident of the Home without she is in good standing in the Order and has been such for ten years prior to her *871 admission, the number of individuals whose welfare the bequest was designed to promote was definitely fixed, and their identity could be ascertained by an inspection of the records of the Order. The bequest, therefore, was not a gift to the Home for charitable uses, as the members of the Order for whose welfare the gift was made were an ascertainable and definite class of beneficiaries. (Zollmann on Trusts, p. 141; Loch v. Mayer, 50 Misc. 442 [100 N.Y. Supp. 837, 839].)
 I have stated in a preceding part of this opinion that practically the sole support of the Eastern Star Homes came from the annual dues and assessments levied against the members of the Order of the Eastern Star in this state. The facts respecting the maintenance and operation of the Home are that the annual cost of such maintenance and operation of the Home is $30,000. Approximately $24,000 of this amount is from annual dues and assessments levied by the Order on its members, and the balance of said annual cost of maintenance, except the sum of $500, is from income on investments made by the corporation from the surplus of previous dues and assessments. Said sum of $500 per annum, the court found, is income "from an endowment fund of the corporation". Respondents state that endowment suggests charity. Admitting that the possession of a substantial endowment fund is frequently taken into consideration in determining the charitable character of an institution possessing such a fund, we have been cited to no instance where the income from an endowment fund so insignificant in comparison to the total upkeep of the institution, as is the endowment income in the present case, has ever been seriously considered in determining whether such an institution is a charitable society. Here the annual income from the endowment fund is less than 2 per cent of the annual cost of maintaining the Home, and it cannot have the effect of determining the charitable character of the Home when the purposes of the Home and the actual operation thereof indicate its non-charitable character.
 Respondents call our attention to the by-laws of the corporation, the Eastern Star Homes, where in four instances reference is made to the corporation as a "charity," and contend that it is bound by such an interpretation of itself. There is no merit in this contention. No authority is cited in support of this assertion of respondents, and we doubt whether any can be found. On the other hand, the contrary rule is followed in this state. (Stewart v. California Medical *872 etc. Assn., 178 Cal. 418, 421, 422 [176 P. 46]; Stonaker v. Big Sisters Hospital, 116 Cal.App. 375, 378 [2 PaCal.2d 520].) It would be an easy matter in those states where charitable societies are exempt from certain taxes, for a corporation organized for purely commercial purposes, to escape taxation by stating in its articles of incorporation or in its by-laws that its purposes were benevolent and that it was a charitable society, if respondents' construction of the law should be accepted.
 I have referred to the heirs of said deceased who have appeared herein by filing a brief in opposition to this appeal as the respondents.
 For the foregoing reasons in my opinion the judgment should be reversed.
 Carter, J., concurred.